Robert W. RIESS, Appellant,

v.

APPRAISAL DISTRICT OF WILLIAMSON COUNTY and Appraisal Review Board of Williamson County, Appellees.

No. 3-86-036-CV.

Court of Appeals of Texas, Austin.

Aug. 12, 1987.

Rehearing Denied Sept. 9, 1987.

Steven L. Martin, Austin, for appellant.

Brian E. Brown, Austin, for appellees.

Before SHANNON, C.J., and BRADY and CARROLL, JJ.

SHANNON, Chief Justice.

This appeal involves the construction and application of Tex.Prop.Tax Code Ann. § 23.51 *et seq.* (1982 & Supp.1987), which, in general, establishes a standard of appraisal for ad valorem tax purposes, other than fair market value, for land designated "open-space."

Appellant Robert W. Riess filed an application with the Williamson County Appraisal District for an open-space valuation of his 9.66 acre tract of land for the 1984 tax year. The Appraisal District denied Riess' application for the reason that his "land is not used to the degree of intensity generally accepted in the area." The denial of Riess' application was sustained by the Appraisal Review Board. Riess then filed suit in the district court of Williamson County for review of the Board's order denying his application for open-space valuation. After a bench trial, the district court rendered judgment that Riess' land did not qualify as open-space agricultural land for 1984 and that, instead, the property was subject to taxation based upon its fair market value. We will reverse the judgment.

There are two separate and distinct constitutional and statutory provisions concerning valuation of land devoted to agricultural use for purposes of ad valorem taxation. One is commonly known as the "Agricultural Use" provision and is found in Tex. Const.Ann. art. 8, § 1–d (Supp. 1987). Section 1–d defines agricultural use to require a "business venture for profit, which business is the primary occupation and source of income of the owner." The statutory qualifications for Section 1–d are found in Tex.Prop.Tax Code Ann. §§ 23.41–23.46 (1982 & Supp.1987). Section 1–d has been construed and applied in a number of opinions including *Gragg v. Cayuga Indep. Sch. Dist.*, 539 S.W.2d 861 (Tex.1976); *San Marcos Consol. Indep. Sch. Dist. v. Nance*, 495 S.W.2d 335 (Tex.Civ.App.1973), *aff'd*, 502 S.W.2d 694 (Tex.1974); and *Klitgaard v. Gaines*, 479 S.W.2d 765 (Tex.Civ.App. 1972, writ ref'd n.r.e.).

The other provision relating to valuation of land devoted to agricultural use for purposes of ad valorem taxation is usually referred to as "Open-Space" valuation and is set out in Tex. Const.Ann. art. 8, § 1–d–1 (Supp.1987). The statutory qualifications for open-space valuation are found in Tex.

Prop.Tax Code Ann. § 23.51 (1982 & Supp. 1987). Open-space land is defined by § 23.51(1) as land "that is currently devoted principally to agricultural use to the degree of intensity generally accepted in the area and that has been devoted principally to agricultural use for five of the preceding seven years...." The present appeal concerns open-space land valuation. The open-space provision, § 23.51(1), was construed and applied in *Bower v. Edwards County Appraisal Dist.*, 697 S.W.2d 528 (Tex.App.1985, no writ).

Riess is a research assistant at the University of Texas in Austin. He owns a small tract of land in the Leander Independent School District. He and his family have lived on this land since 1962. Riess also has the use of his mother's place, an adjoining seven and a half acres. Riess' land is situated in the rough limestone hills on the eastern edge of the Edwards Plateau.

Riess testified to various agricultural uses of his land in 1984. He raised five to ten sheep and sold lambs for twenty to twenty-five dollars each. Riess also kept twenty-five chickens as well as geese and ducks and sold a small number of eggs and poultry. Riess' wife grew plants which she potted and sold. The family also harvested a small amount of fruit from fruit trees on the land for home consumption. Riess also kept a vegetable garden.

In 1984, Riess maintained and endeavored to improve his land. His efforts included two hundred hours spent in erosion control and time spent in maintaining grass cover for his sheep. Many of these measures were taken on the advice of the Travis County extension agent and other agricultural experts.

Wayne Hibler, the Travis County extension agent, testified that in the "rough, hilly country" where Riess ranched, land could be used "primarily" for sheep and goats. "One animal unit" (six sheep) per thirty-five acres was the "norm" in very brushy areas with possibly more animals when the land contained "improved hay meadows." Hibler testified that Riess was only able to support the number of sheep he kept on his small tract by supplemental feeding. Hibler concluded that Riess had "done about all that he possibly, feasibly could do" to increase the potential use of his land. Hibler further concluded that Riess' land use was the same as a typically prudent manager in that area.

There was no proof of non-agricultural uses of Riess' land at any time. With respect to years previous to 1984, Riess testified that in 1977 through 1979, he kept a mare hoping to have her bred. The Riess family also kept chickens, geese, and ducks during these years, planted fruit trees and practiced erosion control.

In 1980, Riess utilized the land for the same purposes other than the fact that he removed the mare in an effort to rejuvenate the pasture grasses.

In 1981, Riess practiced deferred grazing, erosion control, and planted grass seed. In addition, he cleared some cedar from the land. During that period he maintained a chicken flock of up to seventy birds.

In the next year Riess continued his deferred grazing program and he maintained the flock of chickens, the vegetable garden, and the fruit orchard.

In 1983, he introduced sheep into his operation and by the end of the year the number of animals had grown to seven.

The Board's cross-examination of Riess revealed that the *production* from this time period (as in 1984, for that matter), was negligible. In fact Hibler, the county extension agent, testified that the contribution of Riess' land to the agricultural production of the state as a whole was minute and that Riess' effort was a "homestead type operation." The Board also elicited from Hibler the statement that "[y]ou won't find many ranchers that are going to leave it [the land] idle for two and a half years. They're going to find some way to utilize forage off of it."

Upon request, the district court filed findings of fact and conclusions of law. The court found, among other things, that:

2. [Riess'] property has not been devoted principally to agricultural use to the

degree of intensity generally accepted in the area in the year 1984.

3. [Riess'] property has not been devoted *principally to agricultural use to the degree of intensity generally accepted in the area* for five of the seven years preceding 1984, being 1977 through 1983 inclusive.

4. [Riess'] property has not been devoted *principally* to agricultural use for five of the seven years preceding 1984, being 1977 through 1983 inclusive.

5. The property has not been utilized as would an ordinary and prudent manager for the years 1977 through 1984 inclusive. (Emphasis supplied).

By nine points of error Riess asserts that the district court erroneously construed § 23.51(1) and pursuant to the misconstruction of § 23.51(1) its findings of fact were contrary to the evidence. Although Riess' points of error are phrased in terms of factual insufficiency points, an examination of his argument in support of the points and his prayer for relief demonstrates that Riess intended to assert "no evidence" points of error as well as factual insufficiency points.

The controlling consideration in ascertaining the character of a point of error directed at the state of the evidence is not whether the point uses the preferable, or even the proper, terminology, but instead is whether the point is based upon and related to a particular procedural step in the trial and appellate process and is a proper predicate for the relief sought in the appellate court. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex.L.Rev. 361, 362 (1960).

■ Riess' prayer for relief requests of this Court a reversal and rendition of judgment and, only alternatively, a reversal of the judgment and remand of the cause. "No evidence" points are those which call for reversal of the trial court's judgment and rendition of judgment for appellant. "Insufficient evidence" points, in contrast, require the reversal of the trial court judgment and remand of the cause for retrial. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error, supra.* In

sum, Riess' brief raises no evidence claims as well as factual insufficiency points.

In considering a "no evidence" point, the reviewing court must reject all evidence contrary to the trial court's findings and consider only the facts and circumstances which tend to support those findings. *Renfro Drug Co. v. Lewis*, 149 Tex. 507, 235 S.W.2d 609 (1950). In reviewing factual sufficiency points of error, the reviewing Court considers all of the evidence to determine whether the findings are so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate*, 244 S.W.2d 660 (Tex.1951).

Riess claims that the district court's finding that his property had not been devoted principally to agricultural use to the degree of intensity generally accepted in the area for 1984 is, in effect, supported by no evidence. This Court agrees.

Texas Const.Ann. art. 8, § 1–d–1 authorized legislation (§ 23.51 *et seq.*) creating open-space valuation for taxation of land on the basis of its productive capacity. Section 1–d–1(a) provides in part:

To promote the preservation of open-space land, the legislature shall provide by general law for taxation of open-space land devoted to farm or ranch purposes on the basis of its productive capacity....

Section 23.51(1) provides, in pertinent part, that " '[q]ualified open space land' means land that is currently devoted principally to agricultural use to the degree of intensity generally accepted in the area and that has been devoted principally to agricultural use for five of the preceding seven years...."

Section 23.51(2) also provides that agricultural use

includes but is not limited to the following activities: cultivating the soil, producing crops for human food, animal feed, or planting seed or for the production of fibers; floriculture, viticulture, and horticulture; raising or keeping livestock; and planting cover crops or leaving land idle for the purpose of participating in any governmental program or

normal crop or livestock rotation procedure.

The State Property Tax Board in its regulations has defined "agricultural use to the degree of intensity generally accepted in the area" to mean "farming or ranching to the extent that the typically prudent manager of the area of the taxing unit would farm or ranch on an identifiable and substantial tract of land when the tract is devoted principally to agricultural use." *Id.* For verification of the degree of intensity generally accepted in the area, the State Property Tax Board regulations provide that the chief appraiser should inspect the land in question and consult the local extension agent, Agricultural Stabilization and Conservation Service representatives and soil conservation officials. *Id.*

█ Unlike the "Agricultural Use" amendment and statutes, the "Open-Space" amendment and the statutes *do not* require that agriculture be the primary occupation and primary source of income of the applicant nor that the use of the applicant's land be an occupation or a business venture for profit. Instead, the open-space valuation is available if the land in question is devoted principally to agricultural use to the degree of intensity generally accepted in the area.

The most suitable agricultural use for Riess' small tract of land is the raising of sheep and goats. He pastured more sheep than the land would support and, as a consequence, he had to supplement the range grasses with commercial feed. According to the proof, Riess' use of his land was the same as a typically prudent manager in the same area. All of the uses of the land were agricultural within the meaning of the statute. The fact that Riess' commercial contribution to the state's agricultural production was minute and that Riess' ranching operation was "a homestead-type-operation" is irrelevant under § 23.51. The district court's finding that in 1984 Riess' land had not been devoted principally to agricultural use to the degree of intensity generally accepted in the area is supported by no evidence.

Riess urges further that the district court erred in requiring a showing that he had devoted the land principally to agricultural use to the degree of intensity accepted in the area for five of the seven years preceding 1984. Riess asserts that § 23.51(1) does not require the heavy burden imposed by the district court in its finding.

In support of his position Riess point to the pertinent language of § 23.51(1):

"qualified open space land" means land that is currently devoted principally to agricultural use to the degree of intensity generally accepted in the area and that has been devoted principally to agricultural use for five of the preceding seven years....

Riess suggests that § 23.51(1) sets up two separate standards for eligibility: (1) current use must be principally agricultural, *and* practiced to "the degree of intensity generally accepted in the area"; (2) historic use must simply be devoted principally to agriculture. The Board claims "intensity" must be shown for both the current and historic periods, and points out that the State Property Tax Board rules support its interpretation.

In construing § 23.51(1), we first examine Art. 8, § 1–d–1. It appears to this Court that § 1–d–1 expresses two policies to be achieved by the legislature in appraising farm and ranch land: (1) preserve "open-space land"; and (2) provide for taxation on the basis of the land's "productive capacity." Section 23.51 should be construed with a view toward advancing those policies.

Viewed "in context and construed according to the rules of grammar and common usage," Tex.Gov't.Code Ann. § 311.011(a) (Supp.1987), § 23.51 appears to set up different tests depending on whether current usage of the land or historic usage of the land is under examination. "Intensity" is *expressly* made a factor only in examining current use. In fact, the legislative history of the statute reveals that intensity of use was not a consideration for current *or* historic use of the bill passed by the House. Only the Senate, and then the Conference Committee, added the "intensity of use"

requirement, and added it only to that part of the bill concerning current use.

Nothing in the plain language or the legislative history of § 23.51 requires that "intensity of use" be an implied aspect of historical agricultural use. The Board relies, however, upon the agency (the State Property Tax Board) rule 7(a) which provides:

> Where the raising and keeping of livestock to the degree of intensity generally accepted in the area is the principal use to which land is currently devoted and to which it has been principally devoted for five of the preceding seven years, such land is eligible as qualified open-space land.

The Board claims that rule 7(a) implies that "intensity of use" is an element in determining whether the land has historically been devoted principally to agricultural use. Assuming arguendo that rule 7(a) does indeed imply that "intensity of use" is an element of historical usage, the administrative rule *must fall* under our construction of § 23.51. Agency rules, of course, may not impose additional burdens, conditions, or restrictions in excess of or inconsistent with the statutory provisions. *Kelly v. Industrial Accident Board,* 358 S.W.2d 874, 876 (Tex.Civ.App.1962, writ ref'd).

Pursuant to this Court's construction of § 23.51, Riess' burden was to demonstrate that the *principal* use of his land for five of the seven years preceding 1984 was agricultural. The proof, much of which we have summarized, shows that Riess met that burden. The only evidence of a possible non-agricultural use was that from 1977 to 1980 the mare was ridden occasionally. Although Riess' keeping the mare may have been recreational in nature, this possible recreational use was certainly secondary to the agricultural use of the land. Accordingly, this Court sustains Riess' claim that the finding of the district court was supported by no evidence.

In addition, this Court has considered all of the evidence, much of which has been previously detailed. *See Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986).

Without repeating our previous discussion of the record, this Court has concluded that, had it been necessary to reach Riess' points asserting that the evidence was insufficient to support the district court's findings, this Court would have sustained them. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 Tex.L.Rev. 361, 371 (1960).

The judgment is reversed and here rendered that Riess' land qualifies as open-space agricultural land for 1984.