IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN





 





NO. 3-91-241-CV





BASTROP CENTRAL APPRAISAL DISTRICT 


AND BASTROP COUNTY APPRAISAL REVIEW BOARD,


 APPELLANTS


vs.





VERNON L. FRAMPTON,



 APPELLEE



 




FROM THE DISTRICT COURT OF BASTROP COUNTY, 21ST JUDICIAL DISTRICT



NO. 19,310, HONORABLE JOHN L. PLACKE, JUDGE PRESIDING



 




 In this ad valorem tax case, Vernon L. Frampton successfully challenged the denial
of open-space timber valuation on land he owns in Bastrop County. Based upon a jury verdict,
the trial court rendered judgment that 67.43 acres qualify for tax exemption. See Tex. Const. art.
VIII, § 1-d-1(a); Tex. Tax Code Ann. §§ 23.71-.79 (1984 & Supp. 1992). The Bastrop County
Appraisal District and Bastrop County Appraisal Review Board (hereafter collectively, the
"District") appeal. 

 Frampton applied for timber-use valuation seeking to have approximately 107 acres
of land valued for ad valorem tax purposes in accordance with Subchapter E of the Texas Property
Tax Code. See Tex. Tax Code Ann. § 23.75 (Supp. 1992). The District approved the
designation only as to forty acres. Frampton pursued an appeal in district court, and the jury returned a verdict in his favor on the remaining 67.43 acres. The trial court rendered judgment
for Frampton, ordering the property designated open-space timberland for 1988 and 1989, and
awarding him $2500 attorney's fees. We will affirm the judgment with respect to the timber-use
exemption and reverse the judgment on the issue of attorney's fees.

 The Texas Constitution permits the legislature to tax open-space timber land on the
basis of its productive capacity. Tex. Const. art. VIII, § 1-d-1; see also Riess v. Williamson
County Appraisal Dist., 735 S.W.2d 633, 637 (Tex. App. 1987, writ denied). Land qualifies for
timber-use valuation if


it is currently and actively devoted principally to production of timber or forest
products to the degree of intensity generally accepted in the area with intent to
produce income and has been devoted principally to production of timber or forest
products . . . for five of the preceding seven years.



Tex. Tax Code Ann. § 23.72 (Supp. 1992). The burden of showing that the land meets these
qualifications is on the applicant. See Gragg v. Cayuga Indep. Sch. Dist., 539 S.W.2d 861, 869
(Tex.), appeal dism'd, 429 U.S. 973 (1976). The appraisal office can then appraise the value of
land that qualifies on the basis of the category of land in accordance with "accepted income
capitalization methods applied to average net-to-land," as defined by statute. See Tex. Tax Code
Ann. § 23.71 (1982); 1981 Tex. Gen. Laws, 1st C.S., ch. 13, §73, at 145 (Tex. Tax. Code Ann.
§ 23.73(b), since amended). In other words, land principally devoted to timber production is
appraised on the basis of its capacity to produce marketable timber. Thus, section 23.72 sets out
the conditions for determining whether property qualifies as timber land and, if so, section 23.73
provides the method for appraising the timber-productivity value. As directed by the legislature,
the State Property Tax Board (1) developed a manual of guidelines for use by each appraisal office
in appraising qualified timber land and established rules of procedure for use by the appraisal
office in verifying that land meets the conditions of § 23.72. Tex. Tax Code Ann. § 23.73(b). 


 Frampton first applied for timber-use valuation on his property in 1988. His forty
acres of property was the first tract ever to be approved in the county. The appraisal office denied
other landowners' requests for timber valuation in 1985 and 1988, but granted one request in
1988. The District had no local guidelines until late 1989. 

 The District argues on appeal that Frampton failed to prove his land qualifies for
timber valuation because he failed to satisfy the criteria the District employs to appraise qualified
land. Specifically, Framptom did not follow the District's "step-by-step calculations in order to
prove a net-to-land figure." This contention was not argued at trial below. The District claims
additionally that Framptom failed to prove he intends to produce income because he failed to
prove his land produces a rate of growth sufficient to support a commercial timber operation.

 The jury was asked to decide whether Frampton's property qualified for the
exemption; it was not asked to appraise its value. The question inquired:


Do you find from a preponderance of the evidence that for the . . . years [1988 &
1989] the property was currently and actively devoted principally to production of
timber or forest products to the degree of intensity generally accepted in the area
with intent to produce income and has been devoted principally to production of
timber or forest products for five of the preceding seven years?


(Emphasis added). In connection with the inquiry, the jury was instructed that the emphasized
portion 



means that the existing timber resources are sufficient to warrant management for
commercial production or the land resource is being developed and managed for
the production of timber. . . . Such lands are often referred to as commercial
forestland. Generally excluded . . . are lands which have trees . . . but are
incapable of producing at least 20 cubic feet of fiber per year.



(Emphasis added). The jury answered in Frampton's favor, which it could do if it was persuaded
that Frampton's land is (1) currently and actively (2) being developed and managed for the
production of timber (3) with intent to produce income, (4) and has been so used for the time
required. Although the jury was instructed that land incapable of producing at least twenty cubic
feet of wood fiber per year generally does not qualify, this level of growth is not mandatory for
qualification; the jury was not instructed it must find that amount of growth. 

 The District now asserts on appeal that Frampton failed to prove other required
elements of his case. The District did not object to the jury charge below, however, and does not
complain of it here. The charge inquired only as to the single issue and the related special
instruction set out above. The District did not request, by instruction or definition, factors
asserted here, and the District does not suggest additional matters should have been submitted. 
To the extent the District attempts to complain that there were additional facts for the jury to
determine, any error is waived. 



TAX EXEMPTION

 The District complains generally that the evidence is legally and factually
insufficient to support the jury's verdict. Rather than addressing its complaints to any error made
by the trial court or challenging the judgment as improper, however, the District argues against
the weight given to and credibility of the evidence relied upon, matters within the jury's sole
province. In effect, the District argues Frampton's evidence is not credible and should be given
no weight, while the District's evidence is conclusive, binding, and must be believed.

 In its first six points of error, the District complains that the record contains no
evidence or, alternatively, insufficient evidence to support the jury's verdict, particularly its
finding that Frampton operated "with intent to produce income." Even if Frampton's testimony
constitutes some evidence, the District argues that the finding is against the great weight of all the
evidence. The District contends that Frampton's evidence in support of the verdict constitutes no
evidence because it does not comply with the Tax Code and step-by-step valuation calculations
in the District's manual; and, the District's evidence does comply and, therefore, is conclusive. 
To prove land is timberland, the District contends that lay opinion testimony is incompetent and
expert testimony is required. Because Frampton offered no expert testimony, the District's
testimony is dispositive. The District asserts that its expert's opinion affirmatively proves that
Frampton could never intend to manage the land with an intent to produce income, as required. 
In its eighth point, the District simply complains without citation of authority that the jury verdict
is inequitable and wrong. 

 In reviewing a no-evidence challenge, we must consider only the evidence and
reasonable inferences tending to support the verdict and disregard all evidence and inferences to
the contrary. If any evidence of probative value exists that supports the finding, we must affirm
the jury verdict and the challenge must fail. King v. Bauer, 688 S.W.2d 845, 846 (Tex. 1985);
Garza v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965). In reviewing a factual-sufficiency challenge,
we must review all the evidence to determine whether the evidence is insufficient or if the verdict
is so against the great weight and preponderance of the evidence as to be clearly wrong and
manifestly unjust. Sosa v. City of Balch Springs, 772 S.W.2d 71, 72 (Tex. 1989); In re King's
Estate, 244 S.W.2d 660, 661 (Tex. 1951); see also Pool v. Ford Motor Co., 715 S.W.2d 629
(Tex. 1986); see generally William Powers, Jr. and Jack Ratliff, Another Look at "No Evidence"
and "Insufficient Evidence," 69 Tex. L. Rev. 515 (1991).

 The District's underlying position is that the issue of whether land qualifies as
timberland involves "highly technical matters" requiring "great technical expertise" about which
only a scientific expert is competent to offer an opinion. For this reason, the District contends,
only its expert's opinion was competent proof, and because the District's expert was the only
expert who testified, his testimony was conclusive. See, e.g., Exxon Corp. v. West, 543 S.W.2d
667 (Tex. Civ. App. 1976, writ ref'd n.r.e.). Frampton concedes that he is not a forestry expert.

 Opinion testimony does not establish a material fact as a matter of law; an expert's
opinion, even when uncontroverted, is not conclusive and binding on the jury unless the subject
is one for experts alone, where the jury cannot be expected to form correct opinions based upon
the evidence as a whole, aided by their own experience and knowledge. McGalliard v.
Kuhlmann, 722 S.W.2d 694, 697 (Tex. 1986). The District cites no authority for its position that
this is such an instance. We do not believe that the subject in issue, particularly a landowner's
intent with respect to his property, is one solely for experts. Intent is almost always a question
within the jury's province. Valley Stockyards Co. v. Kinsel, 369 S.W.2d 19, 20 (Tex. 1963). 
Generally, a landowner is entitled to give an opinion on the use and value of his own property
without being an expert. Grayce Oil Co. v. Peterson, 98 S.W.2d 781, 783 (Tex. 1937). The jury
decides the credibility and weight the testimony should be given. Benoit v. Wilson, 239 S.W.2d
792, 796 (Tex. 1951).

 Further, the District suggests that it objected to the competence of Frampton's
evidence, exhibits, and testimony of his witnesses. The record does not support this contention. 
The District did not challenge any witness as incompetent, move to strike any evidence or
testimony, request a limiting instruction or the like, or object to any exhibits except perhaps
Frampton's exhibit twenty-nine. The District refers us to more than three-hundred pages of the
statement of facts as its specific reference to the place in the record where error occurred. The
District does not direct any of its complaints by point of error to any ruling by the trial court, save
one.

 In its fifth point of error, the District claims that the trial court erred by overruling
its objection to Frampton's lay-opinion testimony because Frampton was incompetent to testify
on the subject. The record reflects that, without objection, Frampton testified at length about his
land-management plan, commercial sales, related income and expenses incurred, the timber
inventory on his property, and the method he employed in measuring the property's inventory and
calculating its ability to sustain growth. The court admitted the many exhibits without objection. 
Frampton then identified exhibit twenty-nine, a 1989 summary he compiled from his personal
measurements and calculations of the volume in cubic feet of stems he believed present on the
property, excluding oak but including pine and cedar. His data showed his property could sustain
approximately 400 cubic feet per acre of increased wood-fiber growth annually, and he explained
at length his method of reaching this total. Finally, an unidentified summary of the results of his
calculations, presumably exhibit twenty-nine, was admitted over the District's objection that
"there has been no predicate laid that Mr. Frampton used any of the accepted measures of the
industry to make these determinations, that he has the expertise necessary to do that." If any error
was preserved, it was with respect to admission of this exhibit only, which the District does not
challenge on appeal.

 In cross examination and through its expert, the District attacked the credibility and
reliability of Frampton's assertions and calculations, especially on the basis that experts contend
very little land in Texas can produce even 165 cubic feet of growth per acre per year. The jury
did not have to believe all of Frampton's figures; it needed to be persuaded only that the property
was being managed with intent to produce timber income. Even if the property must be capable
of producing adequate annual growth, twenty cubic feet per acre is not absolutely required.

 The evidence shows that Dr. Vernon Frampton bought the 107.43 acres in 1947
when his son Jerry was one-year old. Jerry lived with his wife on the property from 1972 until
1976. Vernon Frampton and his son Jerry Frampton had pastured cattle on the property but
removed the cattle in 1972 in order to foster the spread of pine trees. Their goal is to encourage
the growth of pine and cedar trees on their land, and eventually develop a forest of loblolly pine. 
Aerial and other photos reveal pine and cedar growing on the property, as well as oak. 

 Since 1976, both men had been actively developing and managing the 107 acres as
a single tract of timberland. Each described his management efforts to encourage the spread of
pine trees throughout the property. These efforts included consulting with the Texas Forest
Service in 1976; culling oak hardwood; cutting firebreaks and roads; and selling pine or cedar in
1981, 1982, and 1989. Their efforts have resulted in the spread of pine and, for the moment,
cedar. They planted pine seedlings on one and one-half acres of the tract in dispute. In 1976,
twenty-seven acres out of the 107 was certified as a tree farm by the Texas Forest Service for the
American Tree Farm System. In 1986, the amount was upgraded to 100 acres. By 1988, 42.84
acres of the 107 acres was predominantly pine forest of commercial quantity. The District
eventually approved forty acres of this portion as timberland. The rest of the land is being
developed toward that goal. The disputed property contains a mixture of hardwood, cedar, and
pine, and there are now pockets of pine trees throughout the sixty-seven acres. Efforts to
encourage the spread of pines throughout the entire area have been successful. The property is
in transition to pine, with cedar intermittent. The men also described their work marketing timber
and wood products and developing a timber business for themselves and for the county. They
have contacted potential customers, some of whom have visited the property, and have made some
commercial sales of oak, pine and cedar.

 Jerry Frampton has served as President of the Lost Pines Timber Growers
Association, trying to help develop the industry. He testified to a range of time devoted to the
project and this property, at times expending twenty to forty hours per month, sometimes eighty,
on the land management, the association, developing the timber industry, markets, and the like. 
Vernon Frampton expends more than forty hours a month on this work. He believes the value
of his standing timber has been increased as a result of his efforts.

 Vernon Frampton is a retired research chemist with a doctor of philosophy degree
in biochemistry and a minor in "mathematic physics," but he did not testify as an expert. He
testified that since 1972 he has been engaged in a continuous program of managing the property
toward the goal of developing a forest of loblolly pine in order to produce forest timber or forest
products. He described his efforts to determine the volume of timber on his property and its
annual rate of growth. He took sample plots and attempted a month long inventory of tree
products on the entire property by type, size and number. Frampton explained the means he
employed of measuring his trees. Using high-school level math he calculated the volume of wood
fiber on his land and its annual growth. Frampton freely admits he did not use any one of three
industry-accepted conversion tables in his calculations, these being unreliable in his opinion
because they underestimate the board-foot volume of a log and are inconsistent among themselves. 
He concluded that his sixty-seven acres of land realized an increased growth of approximately 400
cubic feet of wood fiber per acre per year. The amount of growth is higher on the sixty-seven
acres than the pines on the forty acres. In his opinion, all 107 acres is being currently and actively
devoted principally to the production of timber or forest products with even greater intensity than
that of other tree farmers in the county. Although his timber business has been operating at a net
loss, Frampton insists that future prospects are optimistic and could be profitable. 

 Carl Bradford testified that he had spent ninety hours on the property cutting
pulpwood, that being oak, not pine or cedar. Bradford testified that in 1985, he cut twenty-two
cords of oak from Frampton's land; in 1990 he cut sixteen cords from seven-tenths of one acre
on the 67 acre tract; the area where he cut is "just about all pine and cedar now;" he has observed
a change in composition of the forest over the last six years; and there are pine and cedar
seedlings over most of the area.

 Austin Wampler has been in the business of buying, logging, saw-milling and
processing timber in Bastrop County for twenty-seven years. He testified that many products can
be produced from timber besides lumber; that every bit of wood has a marketable use; that the
Doyle scale, one of the industry-accepted methods for measuring wood volume, underestimates
wood volume by fifteen to twenty per cent; that wood fiber can produce a volume of wood
shavings five times greater than the solid wood; that he pays ten dollars per cord for wood; and
that only an area of 1.5 acres out of Frampton's sixty-seven acres has been cleared of timber. 

 The District's expert, Charles Burditt, a forestry consultant for eleven years,
testified that from his calculations using the Doyle log rule scale, the volume of wood on the
sixty-seven acres is extremely low and in his opinion not sufficient to justify a commercial
operation. He discredited Frampton's inventory and calculations, and explained the accepted
method he, Burditt, used. He testified that Frampton's calculations would mean this property far
exceeds the best timberland in East Texas. Burditt disagrees that the sixty-seven acres ever will
produce twenty cubic feet of growth per acre per year; estimates it produces less than ten cubic
feet per acre per year, rather than 400; does not believe the land can produce a profit; and would
not recommend Frampton pursue a commercial operation. Burditt testified that the sixty-seven
acres contains almost no pine. During his first visit, he inspected only about two acres out of the
sixty-seven and took no measurements. During the second visit, he collected data on the forty
acres, while another expert examined the property now in dispute. The two combined to prepare
their findings, but Burditt did not actually gather the data.

 In his preliminary report to the District in 1988 Burditt stated his opinion that the
"land owner is doing an excellent job of land stewardship . . . demonstrated by his obvious
interest in converting the acreage into more productive timber land. The approach to making this
conversion is a sound one." Nevertheless, he determined that the commercial value was marginal.

 The District's local guidelines for Bastrop County now suggest that property have
a minimum site index of sixty-five in order to qualify for timber valuation. Site index is one
factor examined to determine a property's capacity to produce growth. Burditt took tree borings
on the forty acres and determined that it has an actual site index of sixty. (2) Burditt did not take
any borings, take any soil samples, or determine the site index for the sixty-seven acres in dispute. 
He does not explain his method of determining its annual growth rate. Burditt nevertheless
concluded from looking at the growth that since there was "a fully stocked stand of hardwood
already there that wasn't producing 20 cubic feet I had to decline in approving the area."

 Burditt agreed that had he not been on the property to make his own assessment,
he would have relied upon Soil Conservation Service maps and charts to assess the property's
ability to produce annual growth. While testifying, Burditt examined, compared, and interpreted
various maps and charts from the Texas Forest Service and the Soil Conservation Service and
testified that according to these, most of the sixty-seven acres has a site index of seventy, better
than that of the forty-acre tract, and is best suited for growing pine. Burditt conceded that from
looking only at these items the sixty-seven acres has a better site index and lower seed mortality
rate than the forty acres, and could produce more wood fiber per acre. A site index of this level
could have an estimated capability of producing in the range of fifty to eighty-four cubic feet of
wood per acre per year. 

 The jury was called upon to decide whether the property qualified for timber-use
valuation under the test of § 23.72. The District primarily complains that Frampton failed to
prove he intended to produce income from the property. We hold that the evidence is both legally
and factually sufficient to support the jury's affirmative verdict. The record contains ample
probative evidence on which the jury could render its verdict, and its answer is not against the
great weight of all the evidence. We overrule the District's points of error one through six and
eight.



ATTORNEY'S FEES


 In its seventh point of error, the District complains that the trial court erred in
awarding Frampton attorney's fees. Frampton relies upon May v. Appraisal Review Bd. of
Tarrant Appraisal Dist., 794 S.W.2d 906 (Tex. App. 1990, writ denied). The Texas Supreme
Court, however, has recently held that a taxpayer who successfully challenges the denial of open-space land designation is not entitled to recover attorney's fees. Dallas Central Appraisal Dist.
v. Seven Inv. Co., 32 S.Ct.J. 856, 860 (June 10, 1992). We sustain the District's seventh point
of error.



 CROSS POINT

 Frampton complains by cross-point that the trial court erred by rendering judgment
without permitting him to complain of the District's denial of his 1990 application for timber-use
valuation. The jury returned its verdict in March 1990. In August 1990, without leave of court,
Frampton filed an amended petition in this cause complaining of denial for 1990. The trial court
rendered judgment on the verdict and signed the judgment February 26, 1991. 

 Frampton contends that he had an absolute right to amend his pleadings to add later
tax years so long as the appeal for review was pending in the trial court and thereafter was entitled
to another jury trial. Tex. Tax Code Ann. § 42.21(c) (Supp. 1992). The statute permits the
taxpayer to amend a pending action or file a separate cause. Frampton attempted the former. A
party is not entitled to amend his pleadings within seven days of trial, or after verdict, without
leave of court. Tex. R. Civ. P. Ann. 63 (Supp. 1992). We overrule Frampton's cross-point.

 For the reasons set forth above, we reverse the portion of the judgment that awards
attorney's fees to Vernon L. Frampton and render judgment denying Frampton recovery for such
fees. The remainder of the judgment is affirmed.





 

 Marilyn Aboussie, Justice

[Before Chief Justice Carroll, Justices Aboussie and Kidd]

Affirmed in Part; Reversed and Rendered in Part

Filed: July 1, 1992

[Do Not Publish]

1. In 1991 the Legislature placed this responsibility on the comptroller. See 1991 Tex. Gen.
Laws, 2nd C.S., ch. 6, § 26, at 30 (amending Tex. Tax Code Ann. § 23.73(b)).
2. As a general rule, a site index of sixty means that over fifty years a tree on the property
will grow sixty feet tall.