

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

June 23, 1995

Honorable Tom Craddick
Chair
Committee on Ways and Means
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910

Opinion No. DM-355

Re: Whether the cash lease method of valuation of open-space land comports with section 1-d-1 of article VIII of the Texas Constitution (RQ-708)

Dear Representative Craddick:

You ask whether the cash lease method of valuation of open-space land comports with section 1-d-1 of article VIII of the Texas Constitution.[1] Subsection (a) of section 1-d-1 provides as follows:

> To promote the preservation of open-space land, *the legislature shall provide by general law for taxation of open-space land devoted to farm or ranch purposes on the basis of its productive capacity* and may provide by general law for taxation of open-space land devoted to timber production on the basis of its productive capacity. The legislature by general law may provide eligibility limitations under this section and may impose sanctions in furtherance of the taxation policy of this section.

Tex. Const. art. VIII, § 1-d-1 (emphasis added).

The legislature has provided for taxation of open-space land in sections 23.51 through 23.57 of the Tax Code. Section 23.52 of the Tax Code, which sets forth valuation methods, provides in pertinent part:

> (a) The appraised value of qualified open-space land is determined on the basis of the category of the land, using accepted income capitalization methods applied to average net to land. The

---

[1]You ask a general question, without raising legal arguments for a particular determination on this matter.

appraised value so determined may not exceed the market value as determined by other appraisal methods.

Section 23.51 defines the terms "income capitalization" and "net to land." "Income capitalization" means "the process of dividing net to land by the capitalization rate to determine the appraised value." Tax Code § 23.51(5); *see also id.* § 23.53 (setting forth the capitalization rate). "Net to land" means "the average annual net income derived from the use of open-space land . . ." *Id.* § 23.51(4). Section 23.51 requires a chief appraiser to calculate net to land "by considering the income that would be due to the owner of the land under the cash lease, share lease, or whatever lease arrangement is typical in that area for that category of land." *Id.*[2]

In addition to establishing the methods for determining the appraised value of open-space land, section 23.52 of the Tax Code also requires the comptroller (formerly the State Property Tax Board) to develop appraisal manuals to assist appraisal offices around the state:

> (c) The comptroller by rule shall develop and distribute to each appraisal office appraisal manuals setting forth this method of appraising qualified open-space land, and each appraisal office shall use the appraisal manuals in appraising qualified open-space land. . . . The rules, before taking effect, must be approved by a majority vote of a committee comprised of the following officials or their designees: the governor, the comptroller, the attorney general, the

---

[2]Section 1-d-1 was ratified in 1978. Between 1978 and 1987, subsection (4) of section 23.51 provided a different method for calculating "net to land":

> The chief appraiser shall calculate net to land *using an owner-operator budget*, subtracting all ordinary and prudent expenses incurred in pursuit of agricultural use, including all ordinary and prudent expenses incurred in connection with hunting and recreational leases and including owner-labor and fixed and variable costs, from the five year agricultural income using estimates . . . . *Only if insufficient data is available to calculate net to land on the basis of an owner-operator budget*, net to land may be determined by considering the income that would be due to the owner of the land under cash lease, share lease, or whatever lease arrangement is typical in that area for that category of land . . . . [Emphasis added.]

*See* Act of May 21, 1987, 70th Leg., R.S., ch. 780, 1987 Tex. Gen. Laws 2763. House Bill 1867, the legislation which amended subsection (4) to its present form, omitted the owner-operator budget method.

agriculture commissioner, and the Commissioner of the General Land Office.[3] [Footnote added.]

The *Manual for the Appraisal of Agricultural Land* (the *"Manual"*), adopted by the former State Property Tax Board pursuant to this provision, describes three valuation methods for calculating net to land, *i.e.*, the cash lease method, the share lease method, and alternative methods to be used when neither share nor cash leases are available for comparison. *See* State Property Tax Board, Manual for the Appraisal of Agricultural Land 23-28 (Apr. 1990).

The *Manual* provides that under the cash and share lease methods, net to land is the rent that would be due to the property owner under a cash lease or share lease, less expenses typically paid by the property owner. In a cash lease the rent is a fixed amount, whereas in a share lease the rent is a share of the gross receipts for the year, less a share of certain expenses. *Id.* at 23. The cash or share lease used for a specific class of land should represent the payment to a prudent property owner. In some areas, such as those in which the most common lease agreements are between family members, the most common or typical lease agreement may not be prudent for either the property owner or the tenant. *Id.* at 23, 25.

If neither cash nor share leases are available for comparison within the immediate area, the chief appraiser must use alternative methods to determine the amount a reasonable lessee in the area would pay to lease the land on either a cash or share basis. An appraiser may go outside of the appraisal district to find comparable leases. *Id.* at 27. An appraiser must also decide whether to supplement information about such leases by using the owner-operator budget method to determine what a reasonable lessee would pay to lease the land. *Id.* at 27-28. The owner-operator budget method is used to develop an estimated net operating income based on the gross income a prudently managed operation would generate. The estimated net operating income is used to estimate the cash amount or share for which a prudent operator would lease the property. The estimated lease amount is the net to land. *Id.* at 53.

A letter you have submitted with your request states that the *Manual* "uses the term productivity value to be the value arrived at by using a capital rate formula which is termed Cash Lease Method. The typical cash lease is divided by a capitalization rate to yield productivity value." The letter asks, "Does the capital value arrived at by the cash

---

[3]This subsection was amended in 1991 to substitute references to the comptroller for references to the State Property Tax Board. *See* Act of August 25, 1991, 72d Leg., 2d C.S., ch. 6, § 24, 1991 Tex. Sess. Law Serv. 26, 31.

lease method of valuation comply with the intent of the Constitutional requirement [in section 1-d-1, article VIII of the Texas Constitution] based on productive capacity?" We fail to see how the *Manual's* discussion of the methods for determining the appraised value of open-space land could run afoul of the constitution. The *Manual* provides guidance regarding the methods expressly provided for by the legislature when it enacted (or amended)[4] sections 23.51 and 23.52 of the Tax Code.[5]

We believe that the methods set forth in these Tax Code provisions comport with the Texas Constitution, article VIII, section 1-d-1. Section 1-d-1, in providing that "the legislature shall provide by general law for taxation of open-space land devoted to farm or ranch purposes on the basis of its productive capacity," expressly gives the legislature latitude to select valuation methods which will reflect the "productive capacity" of open-space land. The legislature has done so in enacting subsection (4) of section 23.51, and the methods it has selected appear reasonably tailored to reflect "productive capacity."

Finally, we comment on another letter submitted with your request that states that

> land may . . . qualify under section 1-d-1 but is then subject to the cash lease method of valuation that in many cases yields a capital value which far exceeds the capacity of the land to produce. Appraisal districts have adopted the attitude that the cash lease formula is a state mandate and the only method acceptable to determine value.

The letter goes on to suggest that the State Property Division of the comptroller's office should "issue rules that would allow the use of production income under [section] 1-d-1 by appraisal districts when a family owned and operated facility is willing to provide such confidential information." We note that the *Manual* describes the cash lease method, the share lease method, and alternative methods for use when neither share nor cash leases are available for comparison as three methods for calculating net to land. These are the only methods for calculating net to land that are permitted by section 23.51(4) of the Tax Code. Neither section 23.51(4) nor the *Manual* provides for an appraisal of open-space

---

[4]*See supra* note 2.

[5]Although the *Manual*, adopted pursuant to the comptroller's authority under section 23.52(d) of the Tax Code, is entitled to deference, it may not be inconsistent with sections 23.51 through 23.57. *Compare Tarrant Appraisal Dist. v. Moore*, 845 S.W.2d 820, 823 (Tex. 1993) (*Manual* entitled to deference so long as construction is reasonable and does not contradict plain language of statute) *with Riess v. Williamson County Appraisal Dist.*, 735 S.W.2d 633, 637-38 (Tex. App.–Austin, 1987, writ denied) (State Property Tax Board rule held inconsistent with section 23.51).

land based on the actual production income of the particular tract. Any changes authorizing appraisers to use new methods to calculate net to land must be made by the legislature, not the comptroller. Similarly, the capitalization rate, which is established in section 23.53 of the Tax Code, may only be changed by the legislature.

## S U M M A R Y

The valuation methods for calculating "net to land" in determining the appraised value of open-space land set forth in sections 23.51 through 23.57 of the Tax Code comport with section 1-d-1, article VIII of the Texas Constitution. The valuation methods for calculating "net to land" described in the comptroller's *Manual for the Appraisal of Agricultural Land*, including the cash lease method, reflect the valuation methods set forth by the legislature in section 23.51(4) of the Tax Code.

Yours very truly,

DAN MORALES
Attorney General of Texas

JORGE VEGA
First Assistant Attorney General

SARAH J. SHIRLEY
Chair, Opinion Committee

Prepared by Mary R. Crouter
Assistant Attorney General