OPINION




No. 04-03-00455-CV



CORDILLERA RANCH, LTD., et al.,


Appellants



v.



KENDALL COUNTY APPRAISAL DISTRICT,


Appellee



From the 216th Judicial District Court, Kendall County, Texas


Trial Court Nos. 98-210; 99-244 & 00-209


Honorable David Peeples, Judge Presiding



Opinion by: Alma L. López, Chief Justice


Sitting: Alma L. López, Chief Justice

 Paul W. Green, Justice

 Karen Angelini, Justice


Delivered and Filed: March 3, 2004


AFFIRMED

 This appeal arises from a property tax dispute between the plaintiff property owners,
Cordillera Ranch, Ltd. and individual property owners within the Cordillera Ranch subdivision
(collectively referred to as "Cordillera"), and the defendant, Kendall County Appraisal District
("Appraisal District"). Cordillera appeals a summary judgment granted in favor of the Appraisal
District, raising one issue on appeal: whether, in a wildlife management cooperative, each property
owner must independently qualify for open-space valuation by physically performing three of seven
qualifying activities on each lot. The Appraisal District raises three cross-points that are relevant
only if the summary judgment is reversed. Because we affirm the summary judgment, we do not
address the Appraisal District's cross-points.

Background

 The underlying lawsuit is a consolidation of three de novo appeals from the Appraisal
District's denials in 1998, 1999, and 2000 of Cordillera's applications for designation of their
property as "qualified open-space land" under section 23.51 of the Texas Tax Code ("Code"). The
parties filed competing motions for summary judgment under the following stipulations regarding
the issue presented:

 1. [Cordillera and the Appraisal District] stipulate and agree that the sole and
dispositive issue presented is:

 In order to qualify for open space valuation (wildlife management)
under Texas Property Tax Code Section 23.51(7), must three of the
seven wildlife management activities be performed on each lot
seeking to qualify, when that lot together with other lots are subject
to a cooperative agreement for the management of wildlife?


 2. If [Cordillera] must prove that three of seven activities must be performed on a
lot subject to a cooperative agreement for the management of wildlife in order to
qualify such lot, then [Cordillera] will have no evidence that the subject properties
qualify. 


 3. If [Cordillera does] not have to prove that three of seven activities must be
performed on a lot subject to a cooperative agreement for the management of wildlife
in order to qualify such lot, then [Cordillera] will offer evidence that creates an issue
of fact that [Cordillera] qualifies by virtue of the wildlife management activities
conducted on the property as a whole.


 The trial court granted the Appraisal District's no evidence summary judgment motion, and
Cordillera appeals.


Standard of Review

 Cordillera raises an issue of statutory construction which we review de novo. City of San
Antonio v. City of Boerne, 111 S.W.3d 22, 25 (Tex. 2003). Our primary objective in construing a
statute is to give effect to the Legislature's intent. McIntyre v. Ramirez, 109 S.W.3d 741, 745 (Tex.
2003). If the statutory language is unambiguous, we will interpret the statute according to the "plain
and common meaning of the statute's words." State ex rel. State Dep't of Highways & Pub. Transp.
v. Gonzalez, 82 S.W.3d 322, 327 (Tex. 2002) (quoting Fitzgerald v. Advanced Spine Fixation Sys.,
Inc., 996 S.W.2d 864, 865 (Tex. 1999)). However, we also must consider the entire act, its nature
and object, and the consequences that would follow from each construction. Atascosa County v.
Atascosa County Appraisal Dist., 990 S.W.2d 255, 258 (Tex. 1999). Thus, we read the statute as
a whole and interpret it to give effect to every part. City of San Antonio, 111 S.W.3d at 25. 

Qualified Open-Space Land

 On appeal, Cordillera raises the same issue stipulated by the parties in the trial court:
whether, in a wildlife management cooperative ("wildlife co-op" or "cooperative"), each property
owner must independently qualify his lot for open-space valuation by physically performing three
of seven qualifying activities on his lot. Cordillera contends that in a wildlife co-op, the
requirements for open-space valuation are satisfied if the cooperative performs at least three of the
seven qualifying activities on the combined land in the cooperative, to the degree and intensity
typical of the area, resulting in a beneficial impact of the qualifying activities on each tract in the
cooperative. The Appraisal District contends that the plain language of the Code requires each
applicant for an open-space valuation, including wildlife co-op members, to be evaluated separately,
and that each applicant is subject to the explicit requirement that at least three of seven qualifying
activities be performed on his land in order to qualify for the tax exemption.

Open-Space Land Exemption

 The Texas Constitution guarantees that "[t]axation shall be equal and uniform." Tex. Const.
Art. VIII, § 1(a). However, the Texas Constitution provides several exemptions to this rule,
including the open-space land exemption, which provides:

 To promote the preservation of open-space land, the legislature shall provide by
general law for taxation of open-space land devoted to farm, ranch, or wildlife
management purposes on the basis of its productive capacity and may provide by
general law for taxation of open-space land devoted to timber production on the basis
of its productive capacity. The legislature by general law may provide eligibility
limitations under this section and may impose sanctions in furtherance of the taxation
policy of this section.


Tex. Const. Art. VIII, § 1-d-1 (1995 amendment substituted "farm, ranch or wildlife management"
for "farm or ranch"). 

 Subchapter D of chapter 23 of the Code, entitled "Appraisal of Agricultural Land,"
implements the open-space land exemption. Tex. Tax Code Ann. §§ 23.51-23.59 (Vernon 2001).
A person claiming that his land is eligible for appraisal under this subchapter must file a valid
application with the chief appraiser, who must determine separately each applicant's right to have
his land appraised under this subchapter. Tex. Tax Code Ann. §§ 23.54(a), 23.57(a) (Vernon
2001). 

 The specific statute at issue in this case is section 23.51 of the Code, which statutorily defines
the eligibility limitations for the open-space land designation. Tex. Tax Code Ann. § 23.51
(Vernon Supp. 2004). The Code defines "qualified open-space land" as:

 land that is [1] currently devoted principally to agricultural use [2] to the degree of
intensity generally accepted in the area and [3] that has been devoted principally to
agricultural use or to production of timber or forest products for five of the preceding
seven years . . .


Tex. Tax Code Ann. § 23.51(1) (Vernon Supp. 2004) (emphasis and brackets added). The Code
defines "agricultural use" to include "use of land for wildlife management." Tex. Tax Code Ann.
§ 23.51(2) (Vernon Supp. 2004) (this use was added in 1991). "Wildlife management" means:

 actively using land that at the time the wildlife-management use began was appraised
as qualified open-space land under this subchapter in at least three of the following
ways to propagate a sustaining breeding, migrating, or wintering population of
indigenous wild animals for human use, including food, medicine, or recreation:

 (A) habitat control;

 (B) erosion control;

 (C) predator control;

 (D) providing supplemental supplies of water;

 (E) providing supplemental supplies of food;

 (F) providing shelters; and

 (G) making of census counts to determine population.


Tex. Tax Code Ann. § 23.51(7) (Vernon Supp. 2004) (emphasis added; subsection added in 1991). 

 The issue here is narrowly defined to address whether, in a wildlife co-op, each owner must
individually meet the "three of seven qualifying activities" condition to qualify his land for the open-space exemption through the wildlife management classification or whether a tract of land that is part
of a wildlife co-op can meet this condition through the wildlife co-op's qualifying activities. (1)
Cordillera argues that the Appraisal District improperly imposed an additional condition not
contained in the statute by requiring each owner of a lot in a wildlife co-op to perform three of seven
qualifying activities on his lot in order to qualify for the open-space exemption through the wildlife
management classification. Cordillera argues that this condition is inconsistent with the intent of
the statute and with cooperative efforts, which are encouraged through agency guidelines. The
Appraisal District counters that the condition is imposed by the plain language of the statute.
Furthermore, the Appraisal District contends that the Texas Parks and Wildlife Department
("TPWD") manuals require members of a wildlife co-op to be active members. Therefore, each
owner must perform three of seven qualifying activities on his lot.

Construing the Open-Space/Wildlife Management Exemption

 It is a long-standing rule of construction in Texas that language granting exemptions from
taxation must be construed strictly. Bexar Appraisal Dist. v. Incarnate Word College, 824 S.W.2d
295, 297 (Tex. App.-San Antonio 1992, writ denied) (citing Bullock v. Nat'l Bancshares Corp., 584
S.W.2d 268, 271-72 (Tex. 1979); Hilltop Village, Inc. v. Kerrville Indep. School Dist., 426 S.W.2d
943, 948 (Tex. 1968); River Oaks Garden Club v. City of Houston, 370 S.W.2d 851, 855 (Tex.
1963)). Statutory exemptions from taxation are subject to strict construction because they undermine
equality and uniformity by placing a greater burden on some taxpaying businesses and individuals
rather than placing the burden on all taxpayers equally. North Alamo Water Supply Corp. v. Willacy
County Appraisal Dist., 804 S.W.2d 894, 899 (Tex. 1991). An exemption cannot be raised by
implication, but must affirmatively appear, and all doubts are resolved in favor of the taxing
authority and against the claimant. Bullock, 584 S.W.2d at 272. Accordingly, the burden of proof
of clearly showing that the land falls within the statutory exemption is on the claimant. See North
Alamo Water Supply, 804 S.W.2d at 899 (addressing charitable organization exemption).

 In order to qualify for the open-space exemption through wildlife management, the statute
expressly requires the land to be "actively" used "in at least three of the [seven qualifying] ways."
Tex. Tax Code Ann. § 23.51(7) (Vernon Supp. 2004). However, there is no affirmative indication
in the statute regarding whether "actively using the land" encompasses use across a wildlife co-op.
Cordillera contends that wildlife co-ops are not expressly prohibited by the Code. While this is true,
a wildlife co-op tax exemption does not affirmatively appear in the Code. Since a tax exemption
must affirmatively appear, we must consider whether the legislature intended "actively using the
land" to encompass use across a wildlife co-op.

 In construing a statute, we read every word, phrase, and expression in a statute as if it were
deliberately chosen, and presume that words excluded from the statute are done so purposefully.
Sergeant Enterprises, Inc. v. Strayhorn, 112 S.W.3d 241, 246 (Tex. App.-Austin 2003, no pet.). In
1995, the Legislature amended the statute to include the term "actively" and increased the
requirement of "two" qualifying activities to "three" qualifying activities. Act of June 16, 1995, 74th
Leg., R.S., ch. 911, § 1, 1995 Tex. Sess. Law Serv. Ch. 911. Thus, section 23.51(7) now defines
wildlife management to mean "actively using land . . . in at least three of the [seven qualifying]
ways." Tex. Tax Code Ann. § 23.51(7) (Vernon 2001) (emphasis added). This change
demonstrates the Legislature's intent to narrow eligibility for the wildlife management classification.
Furthermore, it signals the Legislature's rejection of passive use of the land as a qualifying wildlife
management use. Thus, this amendment indicates that passive use of a tract of land for wildlife
management, such as placement in a wildlife co-op, is not a qualifying use of the land. The statute
requires more than mere membership in a wildlife co-op in order to qualify the land for the open-space exemption.

 The open-space appraisal procedure set forth in the Code also is useful in ascertaining
Legislative intent with regard to this issue. The statute requires that a "person claiming that his land
is eligible for appraisal under [the open-space exemption] must file a valid application with the chief
appraiser." Tex. Tax Code Ann. § 23.54(a) (Vernon 2001). Once the application is filed, the chief
appraiser must "determine separately each applicant's right to have his land appraised" as such. Tex.
Tax Code Ann. § 23.57(a) (Vernon 2001). Thus, the statutes require independent applications
based on ownership, and they require independent assessment of each application. The statutes do
not provide for a single collective application for property within a wildlife co-op, nor do they
provide for a collective assessment of individual applications from wildlife co-op members.
Furthermore, the statute does not affirmatively provide for consideration of off-site wildlife
management activities. Compare Tex. Tax Code Ann. § 23.51(2) (Vernon Supp. 2004) (defining
"the use of land to produce or harvest logs and posts for use . . . on adjacent qualified open-spaced
land having the same owner and a different agricultural use" as agricultural use). Therefore, each
owner-applicant's land is independently considered, and each must show that he is using his land
for wildlife management by showing that "three of seven qualifying activities" were performed on
his land. Considering the open-space appraisal procedure, the Legislature must have intended the
"three of seven qualifying activities" condition to apply to each owner-applicant's land in a wildlife
co-op. 

 In response, Cordillera directs this court to several agency manuals including: (1)
Comptroller of Pub. Accounts, Manual for the Appraisal of Agricultural Land (1990)
("1990 Ag Manual"); (2) Comptroller of Pub. Accounts, Guidelines for Qualification of
Agricultural Land in Wildlife Management Use (1996) ("1996 WM Guidelines"); (3) Tex.
Parks & Wildlife Dep't, Wildlife Management Activities & Practices: Comprehensive
Wildlife Management Planning Guidelines for the Edwards Plateau and Cross Timbers
& Prairies Ecology Region (1998) (revised draft) ("TPWD Guidelines"); and (4) Kendall
County Appraisal Dist., Guidelines for Wildlife Management ("Appraisal District
Guidelines"). Relying on the agencies' endorsements of wildlife co-ops and other assertions in the
manuals, Cordillera contends that the agencies support the assessment of the wildlife co-op as a unit,
such that the compliance with "three of seven qualifying activities condition" is assessed across the
entire wildlife co-op.

 Construction of a statute by the administrative agency charged with its enforcement is entitled
to serious consideration, so long as the construction is reasonable and does not contradict the plain
language of the statute. Tarrant Appraisal Dist. v. Moore, 845 S.W.2d 820, 823 (Tex. 1993).
Cordillera has shown that from a biological standpoint wildlife co-ops are a reasonable and prudent
wildlife management practice. Thus, we will give serious consideration to the agencies'
endorsements of wildlife co-ops; however, we will not give weight to any construction by the
agencies that contradicts the plain language of the Code.

 Our review of the excerpts in the manuals cited by Cordillera reveals that although the
agencies encourage wildlife co-ops, the agencies require individual assessment of each tract of land
seeking to qualify for the open-space exemption, with one exception. Where several tracts are under
the same ownership, the owner may include his multiple tracts in a single application, and the
appraiser may view the tracts as a unit. 1990 Ag Manual at 13. The Comptroller of Public
Accounts ("Comptroller") provides:

 A property owner may file a single application form covering all tracts within an
appraisal district. He does not have to file a separate form for each tract so long as
he provides sufficient information to show that all tracts qualify under the law.


 The chief appraiser should encourage the owner to file a single form if the owner is
farming or ranching several tracts as a unit. The chief appraiser must view the
entire agricultural operation as a unit - not with respect to the activities on each
individual parcel. The single application form notifies the appraisal district of the
unity of the operation.


1990 Ag Manual at 13 (emphasis added). (2) The comptroller's interpretation is consistent with the
plain language of the statute that requires each "person claiming his land is eligible" to file an
application. Tex. Tax Code Ann. § 23.54(a) (Vernon 2001) (emphasis added).

 Cordillera contends that pursuant to the1990 Ag Manual, the appraiser "must view the entire
agricultural operation as a unit - not with respect to activities on each individual parcel." 1990 Ag
Manual at 13. Therefore, Cordillera argues that the appraiser must view the entire wildlife co-op
as a unit for tax purposes. However, the overall assessment encouraged by the agency is limited to
property under the same ownership. In contrast to the referenced farming or ranching unit, a
wildlife co-op is a unit of mixed ownership. Thus, evaluating the wildlife co-op as one agricultural
unit, as advocated by Cordillera, is contrary to both agency construction and the appraisal procedure
in the statute. 

 Cordillera emphasizes that the TPWD Guidelines and Appraisal District Guidelines provide
for wildlife co-ops and contends that requiring each owner to satisfy the three of seven qualifying
activities conditions is inconsistent with agency objectives in encouraging wildlife co-ops. The
TPWD Guidelines provide: "Landowners of smaller properties that cannot by themselves meet
intensity requirements for wildlife management use may choose to be an active member of a Wildlife
Management Association (wildlife co-op) that is under a cooperative wildlife management plan and
participating in key practices." TPWD Guidelines at 4-5 (emphasis added). Similarly, the
Appraisal District Guidelines provide:

 Wildlife management use does not require a minimum size of land to qualify.
However, the parcel of land must be large enough to sustain the target population.
For example, 10 acres is not sufficient to manage white-tail deer. If an owner wishes
to manage for a species and does not have sufficient land to do so, then the owner
may enter into a cooperative agreement with his neighbor(s).


Appraisal District Guidelines at 1-2.

 The intensity requirement is separate from the requirement that the land be devoted to
agricultural use. The "three of seven qualifying activities" requirement must be met to satisfy the
agricultural use requirement not the intensity requirement. As previously noted, the Code defines
qualified open-space as:

 land that is [1] currently devoted principally to agricultural use [2] to the degree of
intensity generally accepted in the area and [3] that has been devoted principally to
agricultural use or to production of timber or forest products for five of the preceding
seven years . . .


Tex. Tax Code Ann. § 23.51(1) (Vernon Supp. 2004) (emphasis and brackets added).

 The TPWD Guidelines and Appraisal District Guidelines indicate that the "three of seven
qualifying activities" requirement cannot be satisfied through a wildlife co-op while the intensity
requirement can. The TPWD guidelines allow owners to satisfy the intensity requirement for
agricultural use by becoming "active" members in a wildlife co-op. TPWD Guidelines at 4-5. By
omission, the TPWD Guidelines do not allow owners to enter a wildlife co-op to satisfy the "three
of seven qualifying activities" requirement in the definition of wildlife management use. The
Appraisal District Guidelines also indicate that membership in a wildlife co-op can only satisfy the
intensity requirement, as these guidelines require owners in a wildlife co-op to "fulfill the
requirements of wildlife management use." Appraisal District Guidelines at 2. These guidelines
reiterate the requirement that each owner-applicant must perform at least three of seven qualifying
activities on his land. Therefore, the guidelines do not support Cordillera's position.

 Additionally, Cordillera contends that the Appraisal District is imposing a burden that
exceeds the statutory provisions by requiring that each owner in a cooperative "fulfill the
requirements of wildlife management use." Appraisal District Guidelines at 2. Administrative
agency rules cannot impose additional burdens, conditions, or restrictions exceeding or inconsistent
with statutory provisions. Reiss v. Appraisal Dist. Of Williamson County, 735 S.W.2d 633, 638
(Tex. App.-Austin, 1987, writ denied) (holding that district improperly imposed an intensity of use
requirement on past periods of agricultural use). However, the statute in this case specifically
imposes this condition on land owners seeking the open-space land designation through wildlife
management. Cordillera cannot show how this condition does not apply individually to each wildlife
co-op member's land. Furthermore, Cordillera has not shown under what authority the Appraisal
District could view the entire wildlife co-op as a unit. Unlike the appraisal district in Riess, we do
not find that the Appraisal District imposed an additional burden on the Cordillera owners.

 Finally, Cordillera contends that imposing the"three of seven qualifying activities" condition
on each owner in a wildlife co-op is neither practical nor sound from a biological standpoint.
Cordillera contends that we should presume that the Legislature intended the interpretation of section
23.51 to be consistent with the field of science it addresses - biology. Cordillera argues that such
a requirement allows an arbitrary number of tracts to dictate the degree of intensity of management
activities on the wildlife co-op causing the degree of intensity to be excessive and unnecessary.
Cordillera sets forth various factual scenarios to demonstrate that imposing this condition leads to
impractical and absurd wildlife management practices and defeats the purpose of the legislation.

 While we must consider the consequences that follow from our interpretation of a statute
and must reject interpretations that defeat the purpose of the legislation, our interpretation of the
statute does not lead to unreasonable results or defeat the purpose of the open-space exemption.
Atascosa County, 990 S.W.2d at 258. Cordillera's hypothetical scenarios involve the subdivision
of property, which would likely fail in seeking open-space designation based on other statutory
requirements, such as principal use of the land. Additionally, the subdivision of land for
development purposes is what the statute seeks to prevent, not subsidize. The fact that this condition
makes it harder to qualify for the open-space exemption when the land is subdivided is consistent
with the purpose of the open-space exemption, which is the preservation of open spaces. The
Legislature intended to provide agricultural users with an alternative to farming and ranching, but
did not intend to make it easier for land bank developers to keep their land under the open-space
designation. (3) See Hearings on Tex. H.B. 1358 Before the House Comm. on Ways & Means, 74th
Leg., R.S. (April 11, 1995). In response to various concerns regarding potential abuse of the wildlife
management classification, the Legislature tightened the definition of wildlife management to require
active use and three qualifying activities. See id; Act of June 16, 1995, 74th Leg., R.S., ch. 911, §
1, 1995 Tex. Sess. Law Serv. Ch. 911. 

 Considering the entire act, its nature and object, and the consequences that would follow
from each construction, we hold that the statute requires each owner-applicant, including members
of a wildlife co-op, to perform "three of seven qualifying activities" on his land in order to have his
land designated as open-space land through the wildlife management classification. Therefore, based
on the stipulations submitted by the parties in the trial court, the summary judgment is affirmed.

Exclusion of Evidence

 Cordillera also argues that the trial court abused its discretion in excluding the affidavit of
the Texas Parks and Wildlife Department author of the provision in the TPWD Guidelines that
addresses wildlife co-ops. The affidavit testimony concerns the agency's intent with regard to
wildlife co-ops and supports Cordillera's interpretation of the statute. However, when discerning
legislative intent with regard to a statute, post-enactment statements regarding the intent of agency
administrators in drafting administrative guidelines implementing that same statute are irrelevant and
need not be given any weight. See In re Doe, 19 S.W.3d 346, 352 (Tex. 2000) (noting that post-enactment statements by legislators are given very little weight, and do not constitute legislative
history for the purposes of determining legislative intent). The trial court did not abuse its discretion
in excluding the evidence.
Conclusion

 The trial court's judgment is affirmed.

 Alma L. López, Chief Justice




1. Our review is limited to the question of whether land in a cooperative wildlife management arrangement may
be considered to be land devoted to agricultural use. The issue of whether the land is principally devoted to agricultural
use rather than residential or recreational use is not an issue before this court in this appeal.
2. We note that 1990 Ag Manual was issued before wildlife management was defined as an agricultural use under
the statute.
3. Before a House Committee, Texas Wildlife Association representative David Langford testified that the
purpose of the classification was to "help keep people on the land, . . . [people] like my family who [have] been ranching
for seven generations in Kendall County who [are] feeling the pressure of San Antonio's growth. To help allow us to
stay on the land and to help us preserve the land and that lifestyle and not force us to make it a shopping center or
apartment complex." Hearings on Tex. H.B. 1358 Before the House Comm. on Ways & Means, 74th Leg., R.S. (April
11, 1995).