JIM WELLS COUNTY APPRAISAL DISTRICT and Jim Wells County Appraisal Review Board, Appellants,

v.

CAMERON VILLAGE, LTD., Appellee.

No. 04–06–00284–CV.

Court of Appeals of Texas, San Antonio.

July 18, 2007.

Hubert W. Green, Law Office of Hubert W. Green, San Antonio, Tom C. Wheat, Law Office of Tom C. Wheat, Corpus Christi, for appellants.

William B. Steele, III, Locke Liddell & Sapp L.L.P., Austin, for appellee.

Sitting: SANDEE BRYAN MARION, Justice, PHYLIS J. SPEEDLIN, Justice, REBECCA SIMMONS, Justice.

## OPINION

Opinion by PHYLIS J. SPEEDLIN, Justice.

Jim Wells County Appraisal District and Jim Wells County Appraisal Review Board (collectively, "the Appraisal District") appeal the trial court's denial of their motion for summary judgment, and granting of a cross-motion for summary judgment by Cameron Village, Ltd. ("Cameron Village"), which resulted in Cameron Village receiving an ad valorem property tax exemption. In a case of first impression for this court, we must decide whether the legislature expanded the tax exemption, or created a new exemption, when it amended section 11.182 of the Texas Property Tax Code in 2001. TEX. TAX CODE ANN. § 11.182 (Vernon Supp.2006). Because we conclude the 2001 amendment did not expand the existing exemption, or create a new stand-alone exemption, we reverse and render judgment in favor of the Appraisal District and hold that Cameron Village is not entitled to the tax exemption.

### FACTUAL AND PROCEDURAL BACKGROUND

This appeal concerns an ad valorem property tax exemption sought by Cameron Village, the owner of an apartment complex in Alice, Texas. Cameron Village's sole general partner, Community Action Corporation of South Texas ("Community Action Corporation"), filed for an ad valorem tax exemption on behalf of Cameron Village on December 30, 2003. Upon consideration, the Jim Wells County Appraisal District denied the exemption; subsequently, the Appraisal Review Board

denied Cameron Village's protest, leaving the property on the county tax rolls. Cameron Village then brought suit against both the Appraisal District and the Appraisal Review Board, contesting the denial of the tax exemption. Each party stipulated to the material facts and agreed that the controlling legal question in the case involved the applicability of section 11.182. Each side then filed cross-motions for summary judgment on whether Cameron Village is exempt from the ad valorem taxes. The trial court ultimately signed an order granting Cameron Village's motion for summary judgment and denying the summary judgment motion by the Appraisal District. The order states that the Cameron Village Apartments are exempt from ad valorem taxation, orders removal of the apartments from the tax rolls of Jim Wells County effective December 24, 2003, and orders all taxing authorities to refund any taxes paid by Cameron Village since that date. This appeal followed.

Because the parties filed agreed stipulations, the facts in this case are not in dispute. Cameron Village was organized as a limited partnership in April 2000, and thereafter purchased land in Alice, Texas, situated in Jim Wells County. The partnership was designed for "the acquisition, sale, construction, development, leasing, management and financing of the [apartment] project." In 2001, Cameron Village began construction on the Cameron Village Apartments, a 76–unit apartment complex. The apartments were developed as a qualified lower income housing project, and were completed in 2002.

Cameron Village has had three different general partners since its inception, but only its most recent general partner, Community Action Corporation, is relevant to this appeal. Community Action Corporation became the sole general partner of Cameron Village on December 24, 2003; as the general partner, it owns 0.01 percent interest in the limited partnership. Community Action Corporation is the first and only community housing development organization ("CHDO") to be the general

partner of Cameron Village.[2] As the record owner of the apartments, Cameron Village at all times has paid the ad valorem taxes. Prior to December 24, 2003, Cameron Village never claimed it was entitled to or qualified for a tax exemption. Six days after Community Action Corporation became the sole general partner of Cameron Village, on December 30, 2003, Community Action Corporation sought the ad valorem tax exemption at issue in this appeal.

## STANDARD OF REVIEW AND APPLICABLE LAW

■ Because the pertinent facts are stipulated and the only issue is the proper interpretation of section 11.182 of the Property Tax Code, we review the trial court's order granting Cameron Village's motion for summary judgment *de novo*. *See* TEX. TAX CODE ANN. § 42.23(a) (Vernon Supp.2006); *In re Forlenza*, 140 S.W.3d 373, 376 (Tex.2004) (statutory construction is a question of law which appellate court reviews *de novo*); *Am. Broad. Companies, Inc. v. Gill*, 6 S.W.3d 19, 27 (Tex. App.-San Antonio 1999, pet denied), *overruled in part on other grounds by Turner v. KTRK Television, Inc.*, 38 S.W.3d 103 (Tex.2000) ("[w]hether an order grants or denies a motion for summary judgment, we apply the same *de novo* standard of review"). When both parties move for summary judgment and the trial court grants one motion but denies the other, as in this case, the appellate court reviews both sides' proof and determines all questions presented by the motions. *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex.2001). The appellate court should then render the judgment the trial court should have rendered. *Id.*

■ It has long been established that exemptions from taxation are strictly construed and that all doubts are resolved against the exemption. *See N. Alamo Water Supply Corp. v. Willacy County Appraisal Dist.*, 804 S.W.2d 894, 899 (Tex. 1991) (holding that "[s]tatutory exemptions from taxation are subject to strict construction because they undermine equality and uniformity by placing a greater burden on some taxpaying businesses and individuals rather than placing the burden on all taxpayers equally"); *see also Hilltop Village, Inc. v. Kerrville Ind. Sch. Dist.*, 426 S.W.2d 943, 948 (Tex.1968) ("tax exemptions are subject to strict construction since they are the antithesis of equality and uniformity"). Accordingly, an exemption cannot be raised by implication, but must be affirmatively shown, resolving all doubts in favor of the taxing authority and against the claimant. *Bullock v. Nat'l Bancshares Corp.*, 584 S.W.2d 268, 272 (Tex.1979).

The primary objective in construing any statute is to determine and give effect to the legislature's intent. *Warner v. Glass*, 135 S.W.3d 681, 683 (Tex.2004). A court begins with the plain and common meaning of the statute's words. TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 2005) ("[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage"). When construing a statute, "we read every word, phrase, and expression . . . as if it were deliberately chosen. . . ." *Cordillera Ranch, Ltd. v. Kendall County Appraisal Dist.*, 136 S.W.3d 249, 254 (Tex.App.-San Antonio 2004, no pet.). "If the meaning of

**2.** Community Action Corporation was chartered as a non-profit corporation in 1970, is a section 501(c)(3) organization under the Internal Revenue Code, and is recognized by the Texas Department of Housing and Communi-
ty Affairs as a community housing development organization or CHDO. *See* 42 U.S.C.A. § 12704(6) (West 2007); TEX. TAX CODE ANN. § 11.182(a)(2).

the statutory language is unambiguous, we adopt ... the interpretation supported by the plain meaning of the provision's words and terms." *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865 (Tex.1999). Extrinsic evidence of legislative intent is not analyzed if intent is apparent from the language of the statute. *See id.* at 866 ("when we stray from the plain language of a statute, we risk encroaching on the Legislature's function to decide what the law should be"); *see also Minton v. Frank*, 545 S.W.2d 442, 445 (Tex.1976).

## DISCUSSION

■ In their motions for summary judgment, and now on appeal, the parties disagree about the proper interpretation and applicability of subsection (e) which was added to section 11.182 of the Property Tax Code by the Legislature in 2001.[3] TEX. TAX CODE ANN. § 11.182(e). We begin our analysis with a brief historical perspective of the entire provision. Section 11.182 was first enacted in 1997 and was intended to provide a property tax exemption for CHDOs, as clearly proclaimed by the statute's original title: "Community Housing Development Organizations Improving Property for Low–Income and Moderate–Income Housing." TEX. TAX CODE ANN. § 11.182. The relevant provision at issue in this appeal, subsection (e), was then added in 2001; however, the basic requisites for the exemption set forth in subsections (b) and (c) remained unchanged.[4] *Id.* Subsection (e) applies to "housing project[s] constructed after December 31, 2001, and financed with ... low-income housing tax credits...." *Id.* at § 11.182(e).

Cameron Village contends that the plain language of the newly created subsection (e)(1) extends the CHDO exemption to *property owned by a limited partnership* if the CHDO controls 100 percent of the interest in the general partner and meets other "applicable" requirements. Cameron Village maintains the Legislature intended this result because of "market place realities" so that property financed with federal low-income tax credits would also be eligible for a state property tax exemption. In support of its interpretation, Cameron Village emphasizes the following language of the subsection:

(e) In addition to meeting the applicable requirements of Subsections (b) and (c), **to receive an exemption under Subsection (b)** for improved real property that includes a housing project constructed after December 31, 2001, and financed with ... low-income housing tax credits, **the organization must:**

(1) **control 100 percent of the interest in the general partner if the project is owned by a limited partnership;**

(2) comply with all rules of and laws administered by the Texas Department of Housing and Community Affairs applicable to community housing development organizations; and

(3) submit annually to the Texas Department of Housing and Community Affairs and to the governing body of each taxing unit for which the project receives an exemption for the housing project evidence demonstrating that the organization spent an amount equal to at least 90 percent of the project's cash flow in the

3. Act of June 15, 2001, 77th Leg., R.S., ch. 1191 § 1, 2001 Tex. Gen. Laws 2695 (current version at TEX. TAX CODE ANN. § 11.182(e) (Vernon Supp.2006)).

4. Previous subsections (a) and (b) were renumbered as subsections (b) and (c) in the 2001 Act, but otherwise remained unchanged.

preceding fiscal year as determined by the audit required by Subsection (g), for eligible persons in the county in which the property is located, on social, educational, or economic development services, capital improvement projects, or rent reduction.

TEX. TAX CODE ANN. § 11.182(e) (emphasis added).

In response, the Appraisal District argues the newly created subsection (e) does not extend or create a new exemption. It maintains that rather than granting a new, stand-alone exemption for limited partnerships, a plain reading of subsection (e) shows that it only *adds* new requirements "for housing projects constructed after December 31, 2001." In support of its argument, the Appraisal District contends that the introductory phrase in subsection (e), "**In addition to** meeting the applicable requirements of subsections (b) and (c) . . . ," means what it says. *Id.* (emphasis added). For the reasons stated below, we agree with the Appraisal District.

### Plain Language of the Statute

■ When enacting subsection 11.182(e), the Legislature structured the new provision with two introductory phrases followed by three requirements: "**In addition to** meeting the applicable requirements of Subsections (b) and (c) . . . , to receive an exemption under Subsection (b) . . . **the organization must** . . . (1) . . . (2) . . . **and** (3). . . ." TEX. TAX CODE ANN.

§ 11.182(e) (emphasis added). By the plain meaning of its first three words, "in addition to," subsection (e) requires compliance with the original requirements of "Subsections (b) and (c)," as well as the three new requirements set forth in subsection (e). *Id.; see also Am. Housing Found. v. Brazos County Appraisal Dist.,* 166 S.W.3d 885, 889 n. 2 (Tex.App.-Waco 2005, pet. denied) (holding subsection (e) requires compliance with both subsections (b) and (c)). To meet the requirements of the original subsection (b)[5], the organization (taxpayer) seeking an exemption must: (1) be organized as a CHDO; (2) qualify as a charitable organization; (3) own the property for the purpose of building or repairing housing on the property to sell without profit to a low-income or moderate-income individual or family satisfying the organization's eligibility requirements or to rent without profit to such an individual or family; *and* (4) engage exclusively in the building, repair, and sale or rental of low-income housing. TEX. TAX CODE ANN. § 11.182(b)(1)-(4).[6] Here, Cameron Village is the record owner of the property; however, absent its interpretation of subsection (e), it would not qualify for the tax exemption because it is not organized as a CHDO or a charitable organization. *Id.*

According to its interpretation, Cameron Village maintains that the plain language of subsection (e)(1) extends the CHDO ex-

---

**5.** All parties agree that subsection (c) is not relevant to the issue that we must decide.

**6.** Subsection § 11.182(b) provides:

(b) An organization is entitled to an exemption from taxation of improved or unimproved real property it owns if the organization:

(1) is organized as a community housing development organization;

(2) meets the requirements of a charitable organization provided by Sections 11.18(e) and (f);

(3) owns the property for the purpose of building or repairing housing on the property to sell without profit to a low-income or moderate-income individual or family satisfying the organization's eligibility requirements or to rent without profit to such an individual or family; and

(4) engages exclusively in the building, repair, and sale or rental of housing as described by Subdivision (3) and related activities.

TEX. TAX CODE ANN. § 11.182(b).

emption for *property owned by a limited partnership* if the CHDO controls 100 percent of the interest in the general partner. TEX. TAX CODE ANN. § 11.182(e)(1). In essence, Cameron Village argues that subsection (e)(1) operates as a stand-alone exemption provision. Our reading of the statute as a whole does not permit such a result. First, the Legislature chose to begin subsection (e) with the words "in addition to," indicating that it is an additional requirement to those provided in the original subsections (b) and (c), not a grant of a new exemption. Second, Cameron Village's argument fails because it also ignores the significance of the second phrase used in the new provision. The second phrase of subsection (e), "to receive an exemption under Subsection (b)," clarifies that a new exemption is not being created. Instead, based on the plain language used by the Legislature, subsection (b) remains the sole express grant of an exemption. *Id.* at § 11.182(b), (e). Moreover, looking at subsection (e) in full context, it states that " ... the organization must ...," and then lists (e)(1), (2) *and* (3). *Id.* at § 11.182(e). We interpret this statutory structure as setting forth three requirements under the new subsection (e). Cameron Village's argument would have us read (e)(1) separately, as an affirmative grant of a new exemption, and then read (e)(2) and (e)(3) as mere requirements to be met for that new exemption. Such an interpretation would read (e)(1) out of context and without regard to the structure of the entire subsection (e).

Finally, the wording of section 11.182(e)(1) is not the Legislature's typical phraseology used when affirmatively granting an ad valorem tax exemption. In the Property Tax Code, the Legislature generally uses explicit wording to grant an exemption, most uniformly employing the following words: "An organization [or person or association] is *entitled to an exemption from taxation of ... property it owns,* if the organization [meets the stated requirements]." This standard phrasing is used in subsection 11.182(b) and in no less than 27 other sections of Chapter 11 of the Property Tax Code which grant exemptions to various property owners. *Compare* TEX. TAX CODE ANN. §§ 11.18 through 11.31 *with* § 11.182(e)(1) (Vernon 2001 & Supp.2006). Accordingly, when the Legislature intends to grant an exemption, it generally uses the same phrasing as a matter of uniformity, and certainly could have done so in subsection (e) if it intended to create a new exemption for limited partnerships with a CHDO as the sole general partner.

Given the context, organization, and plain meaning of subsection 11.182(e), we hold that section 11.182(e)(1) does not expressly create a new stand-alone CHDO exemption for "property owned by a limited partnership" when the CHDO controls 100 percent of the interest in the general partner. Therefore, the addition of subsection (e)(1) does not dispose of the requirement that the owner of the property be a CHDO and a charitable organization.

### Cameron Village's Additional Arguments

Cameron Village also argues it is entitled to the tax exemption because: (1) subsection (b)(3)'s ownership requirement is not an "applicable" requirement when the property [7] is owned by a limited partnership; or, alternatively, (2) a CHDO's acquisition of 100 percent of the interest in the general partner and concomitant con-

---

7. Cameron Village's argument fails to recognize or address the precise wording of subsection (e)(1) in which the legislature chose to use the word "project," not the word "prop-

erty," to describe what the limited partnership "owns." TEX. TAX CODE ANN. § 11.182(e)(1).

trol over the property is deemed equivalent to "ownership" of the property.

### (1) The Modifier "Applicable"

■ Turning first to Cameron Village's argument that the modifier "applicable" is critical, Cameron Village maintains the only way subsections 11.182(e)(1) and 11.182(b) can be harmonized is to find that property ownership by the CHDO is not an "applicable requirement" when a limited partnership owns the property. In other words, Cameron Village argues the word "owns" in subsection (b) should be disregarded because it must not be "applicable" when a limited partnership owns the property. We disagree with Cameron Village's reading of the statute.

Statutory exemptions are subject to strict construction, and we cannot simply disregard the term "owns." *See Bullock,* 584 S.W.2d at 271–72. Cameron Village's interpretation would require us to disregard the ownership requirements expressed at least five times in subsections (b), (b)(3), (c), (f), and (h) of section 11.182, essentially rewriting the section and violating all rules of strict construction. *See id.; see also, e.g.,* Tex. Tax Code Ann. § 11.182(b) ("[a]n organization is entitled to an exemption from taxation of improved or unimproved real property **it owns** ..."), § 11.182(b)(3) (listing the third of four requirements as "if the organization ... (3) **owns the property** for the purpose of building ..."). The word "owns" has a plain and common meaning. *See* Tex. Gov't Code Ann. § 312.002 (Vernon 2005) (statutory "words shall be given their ordinary meaning"). Any disregard of the word "owns" is simply a rewriting of the section, in violation of the rule of strict construction which requires a clearly expressed grant of an exemption, not one derived by implication or inference. *See Bullock,* 584 S.W.2d at 272. By the plain language of the statute, the organization

seeking an exemption must "own" the property *and* be organized as a CHDO and charitable organization and be engaged exclusively in the sale or rental of low-income housing as required by subsections 11.182(b)(1), (2), (3), and (4), before the new requirements of subsection 11.182(e) become relevant. Tex. Tax Code Ann. § 11.182(b)(1)-(4) and (e).

■ Additionally, the statute must be construed to require ownership by the CHDO because the state constitution mandates it. *Baptist Memorials Geriatric Ctr. v. Tom Green County Appraisal Dist.,* 851 S.W.2d 938, 944 (Tex.App.-Austin 1993, writ denied) (statute must be read in harmony with constitutional requirements); *Brazos River Conservation and Reclamation Dist. v. Costello,* 135 Tex. 307, 143 S.W.2d 577, 580 (Tex.1940) (constitutional provisions may be read into and considered a part of the statute). Both the Texas Property Tax Code and the Texas Constitution provide for exemptions from ad valorem taxation, and the taxpayer must satisfy both statutory and constitutional requirements to qualify for a tax exemption. *See N. Alamo Water Supply Corp.,* 804 S.W.2d at 899; *Hilltop Village, Inc. v. Kerrville Indep. Sch. Dist.,* 410 S.W.2d 824, 825 (Tex.Civ.App.-San Antonio 1966), *aff'd,* 426 S.W.2d 943 (Tex.1968). Article VIII, section 2(a) of the Texas Constitution provides that, "[a]ll occupation taxes shall be equal and uniform upon the same class of subjects ...; but the legislature may, by general laws, exempt from taxation ... all buildings used exclusively and *owned by ... institutions engaged primarily in public charitable functions* ... and all laws exempting property from taxation other than the property mentioned in this Section shall be null and void." Tex. Const. art VIII, § 2(a) (emphasis added). Therefore, under the Texas Constitution, to qualify for a CHDO

exemption as an entity engaged primarily in a public charitable function, the CHDO must own the property; a for-profit limited partnership which is not a CHDO would not qualify.

Moreover, Cameron Village cannot simply pick and choose among statutory requirements which are listed in the conjunctive to determine which are "applicable" to them and which are not. Subsection 11.182(b) lists four requirements connected by the word "and." New subsection (e) then adds other requirements that are "[i]n addition to meeting the applicable requirements of Subsection[ ](b) . . . ." TEX. TAX CODE ANN. § 11.182(b), (e). Using its ordinary and common meaning, the term "applicable" means "pertinent," or "appropriate." BLACK'S LAW DICTIONARY 90 (5th ed.1979). Looking to subsection (b), we note that there are several parts that provide alternative methods of meeting the requirements. For example, under subsection 11.182(b)(3), the CHDO must own the property for a specified purpose: "building *or* repairing housing on the property to sell without profit to a low-income or moderate-income individual or family . . . *or* to rent without profit to such an individual or family." TEX. TAX CODE ANN. § 11.182(b)(3) (emphasis added). Similarly, under subsection 11.182(b)(4), the CHDO must be engaged exclusively in the "building, repair, and sale *or* rental of housing as described by Subdivision (3) and related activities." TEX. TAX CODE ANN. § 11.182(b)(4) (emphasis added). Therefore, some stated methods of meeting the requirements might not be "applicable" or pertinent in all situations.

### (2) Deemed Ownership

We now turn to Cameron Village's second argument. It asserts that when the CHDO owns 100 percent of the general partner, it therefore controls the property and should be deemed the "owner" of

the property for purposes of subsection 11.182(b)(3). Specifically, Cameron Village contends Community Action Corporation's acquisition of 100 percent interest in the general partner and concomitant control over the property should be deemed equivalent to direct "ownership" of the property. For the reasons stated below, we conclude that this argument also fails.

In support of its argument, Cameron Village cites us to *TRQ Captain's Landing L.P. v. Galveston Cent. Appraisal Dist.*, 212 S.W.3d 726 (Tex.App.-Houston [1st Dist.] 2006, pet. filed). *TRQ* involved the Captain's Landing Apartments, a Galveston complex purchased in 1998 by TRQ Captain's Landing, L.P. ("TRQ"). As a result of several transactions in December 2003, American Housing Foundation ("AHF"), a qualified CHDO, obtained ownership and 100 percent control of TRQ's sole limited partner, CD Captain's Landing, L.L.C. ("CD"). TRQ, however, continued to be the apartments' record titleholder.

After AHF became its sole limited partner, CD filed an application for an ad valorem tax exemption for the apartments. Galveston Appraisal District denied CD's request because CD did not own the property. AHF brought suit in district court. The trial court ruled for the appraisal district, finding that CD was not a CHDO and did not own the project and that the application for a tax exemption was not timely filed. The appellate court reversed the trial court holding that to be eligible for an exemption pursuant to subsection 11.182(b) an applicant "need only show that it 'owns' the property, be it equitably or legally." *TRQ*, 212 S.W.3d at 736.

*TRQ*, however, was a 2–1 decision. In a strongly worded dissent, Justice Bland concluded that AHF, the CHDO, was not entitled to a tax exemption because it was

not the legal "owner" of the property subject to taxation. *Id.* at 739. The dissenting opinion noted that subsection 11.182(b) twice requires that a CHDO "own" the property in order to qualify for a tax exemption, but never defines the term "own." *Id.* "Thus, our decision turns on whether we impute ownership beyond the legal title holder for property tax exemption purposes." *Id.* at 740. "Nothing in the plain language of the statute permits such an interpretation, and cases interpreting the Tax Code have not done so. To the contrary, the Texas Supreme Court has held that an exemption from taxation should not be found unless the plain language of the statute confers it. . . ." *Id.* The dissent also states that entities which invest in business organizations that own real property are simply the equitable owners of *those organizations,* not the equitable owners of *the property.* *Id.* at 742.

With all due respect to our sister court, we find the dissent in *TRQ* to be the more persuasive opinion. As the Texas Supreme Court has stated:

> Statutory exemptions from taxation are subject to strict construction since they are the antithesis of equality and uniformity and because they place a greater burden on other taxpaying businesses and individuals. An exemption cannot be raised by implication, but must *affirmatively appear,* and all doubts are resolved in favor of [the] taxing authority and against the claimant. Simply stated, the burden of proof is on the claimant to clearly show that it comes within the statutory exemption.

*Bullock,* 584 S.W.2d at 271–72 (emphasis added) (citations omitted). Accordingly, we decline to follow the majority opinion in *TRQ.* Section 11.182 clearly requires ownership by the CHDO. Here, Community Action Corporation, the CHDO, does not hold legal title to the property, and Cameron Village, the legal owner, is a limited partnership that does not qualify for a tax exemption under subsection 11.182(b). Accordingly, we conclude that Cameron Village is not entitled to a tax exemption under section 11.182(b). In light of our resolution of the first issue, we need not address the Appraisal District's argument that Cameron Village failed to timely file the application for a tax exemption.

### CONCLUSION

■ Based on the foregoing reasons, we conclude that the Legislature did not expand the existing tax exemption, or create a new stand-alone exemption, when it added subsection (e) to section 11.182 of the Texas Property Tax Code in 2001; subsection (e) merely added three requirements to the existing CHDO exemption for housing projects constructed after December 31, 2001. TEX. TAX CODE ANN. § 11.182(e). Applying the principles of strict statutory construction as we must, a plain reading of section 11.182 in its entirety, and subsections (b) and (e) in particular, demonstrates that the exemption is intended only for an organization which "owns" the real property at issue, *and* which is a CHDO and a charitable organization engaged exclusively in the sale or rental of low-income housing. In other words, the CHDO must be the record owner of the property to qualify for the exemption under section 11.182(b). Here, Cameron Village, the limited partnership, is the record owner of the property, but is neither a CHDO nor a charitable organization, and thus does not meet the requirements for the exemption set forth in subsection (b). Its general partner, Community Action Corporation, is a CHDO, but it cannot meet the requirements of subsection (b) because Community Action Corporation does not hold title to the apartments. Accordingly, Cameron Village did not prove that it is entitled to the

tax exemption as a matter of law; therefore, the trial court erred in granting summary judgment in its favor. We reverse the judgment of the trial court and render judgment in favor of the Appraisal District, holding that Cameron Village is not entitled to the tax exemption under section 11.182.

Dissenting opinion by REBECCA SIMMONS, Justice.

REBECCA SIMMONS, Justice, dissenting.

Because I believe the plain meaning of the statute supports Cameron Village, Ltd.'s exemption from ad valorem taxes, I respectfully dissent from the majority's construction and interpretation of section 11.182 of the Texas Tax Code. TEX. TAX CODE ANN. § 11.182 (Vernon 2001).

### ISSUE PRESENTED

All parties agree that the crux of this case is the interpretation of section 11.182 of the Texas Tax Code, as amended by the legislature in 2001.[1] TEX. TAX CODE ANN. § 11.182 (Vernon 2001). Section 11.182 provides, in pertinent part:

(b) An organization is entitled to an exemption from taxation of improved or unimproved real property *it owns* if the organization:

(1) is organized as a community housing development organization ("CHDO");

(2) meets the requirements of a charitable organization provided by Sections 11.18(e) and (f);

(3) *owns the property* for the purpose of building or repairing housing on the property to sell without profit to a low-income or moderate-income individual or family satisfying the organization's eligibility requirements or to rent without profit to such an individual or family; and

(4) engages exclusively in the building, repair, and sale or rental of housing as described by Subdivision (3) and related activities.

. . .

(e) *In addition to meeting the applicable requirements of Subsections (b) and (c),* to receive an exemption under Subsection (b) for improved real property that includes a housing project constructed after December 31, 2001, and financed with qualified 501(c)(3) bonds issued under Section 145 of the Internal Revenue Code of 1986, tax-exempt private activity bonds subject to volume cap, or low-income housing tax credits, the organization must:

(1) *control 100 percent of the interest in the general partner if the project is owned by a limited partnership;*

*Id.* (emphasis added). The conflict in this case arises from subsection (b)'s requirement that a CHDO "own[ ] the property" in order to qualify for the exemption and the language in subsection (e)(1) providing that under certain circumstances a CHDO that controls "100 percent of the interest in the general partner" of a limited partnership can receive the subsection (b) exemption. Thus, the real issue is whether a limited partnership with a CHDO general partner that owns a low-income housing project can qualify for an ad valorem tax exemption under section 11.182.

### LOW-INCOME HOUSING TAX CREDITS

The construction of the Cameron Village project was financed, in part, with federal

---

1. Act of Jun. 15, 2001, 77th Leg., R.S., ch. 1191 § 1, 2001 Tex. Gen. Laws 2694.

low-income housing tax credits. In order to place the amendment to section 11.182, which expressly addresses low-income housing tax credits, in context, some background discussion of the evolvement of those credits is helpful.

As part of the Tax Reform Act of 1986, Congress established the low-income housing tax credit (LIHTC) program to encourage private investors to contribute funding for developing housing for low-income households. *See* I.R.C. § 42 (2007); *see also* Marni M. Hussong, *Protecting Exempt Status in Low–Income Housing Tax Credit Partnerships*, 31 REAL ESTATE TAX'N 75 (First Quarter 2004). Since its inception, the LIHTC program has become the primary source of funding for low-income housing development. *Id.* Although both for-profit and tax-exempt developers compete for the credits, preference is given to the tax-exempt developers. *Id.* Tax-exempt developers, however, generally do not owe taxes and cannot directly use the credits. *Id.* As a result, in order to take advantage of the tax credits, tax-exempt developers partner with for-profit investors, and the for-profit investors use the credits to reduce their tax liability. *Id.* The low-income projects, therefore, are generally developed by limited partnerships where the tax-exempt organization serves as the general partner and retains a 1% interest, while the for-profit investors serve as limited partners retaining a 99% interest in the partnership. *Id.*

### STATUTORY CONSTRUCTION

According to the majority's interpretation, Cameron Village is not entitled to an exemption because the owner of the property, Cameron Village, Ltd., is not a CHDO. The majority, however, never ascribes a meaning to section 11.182(e)(1). If section 11.182(e)(1) does not extend the exemption to a limited partnership with a CHDO general partner where the project is financed with LIHTC, why was section 11.182(e)(1) added to the statute? Because of the long standing principle that the "legislature is *never* presumed to have done a useless act," the majority's review of section 11.182 is incomplete. *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex.1981) (citing *Red River Nat'l Bank v. Ferguson*, 109 Tex. 287, 292, 206 S.W. 923, 925 (1918) (holding that all words used and omitted are presumed used and omitted purposefully)).

The most important rule of statutory construction is that the court must give effect to legislative intent. *See Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 383 (Tex.2000). The assumption is that the legislature intended to say what it meant and its words are therefore the best insight as to its intent. *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865–66 (Tex.1999). In short, every word of a statute must be presumed to have been used for a purpose. *Marcus Cable Assocs. v. Krohn*, 90 S.W.3d 697, 706 (Tex.2002) (requiring the courts to consider the statute as a whole and make all attempts to "harmonize its various provisions").

Our analysis must, however, look to the statute *as a whole* and not to its isolated provisions. *Morrison v. Chan*, 699 S.W.2d 205, 208 (Tex.1985) (emphasis added). *See also Meritor Auto., Inc. v. Ruan Leasing Co.*, 44 S.W.3d 86, 90 (Tex.2001) (determining a court cannot confine its review to isolated statutory words, phrases, or clauses, but must instead examine the entire act). Although tax exemption statutes are to be narrowly or strictly construed in favor of the taxing authority, *N. Alamo Water Supply Corp. v. Willacy County Appraisal Dist.*, 804 S.W.2d 894, 899 (Tex. 1991), the rule is subject to the requirement that the court give effect to the

legislative intent and the general rule of interpreting statutes in a reasonable manner. *Strayhorn v. Raytheon E–Systems, Inc.,* 101 S.W.3d 558, 565 (Tex.App.-Austin 2003, pet. denied). Thus, although we are required to construe tax exemptions strictly, "the rule of strict construction cannot be used as an excuse to stray from reasonableness." *Sharp v. Tyler Pipe Indus., Inc.,* 919 S.W.2d 157, 161 (Tex.App.-Austin 1996, writ denied).

The majority interprets the introductory language of subsection (e), which provides: "[I]n addition to meeting the applicable requirements of Subsections (b) and (c)," as incorporating **all** the requirements of (b) and (c). Applicable is defined, however, as "[t]hat can be applied; relevant or appropriate: a rule not applicable in all cases." THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (4th ed.2006). "Applicable" cannot be equated with "all" or the word has no meaning. Thus, we must examine which requirements in subsection (b) "can be applied" to an organization meeting the requirements of subsection (e).

Section 11.182(e) expressly envisions an organization receiving an exemption where: (1) the organization is the general partner of a limited partnership; (2) the limited partnership owns the housing project; and (3) the housing project was financed with LIHTCs. TEX. TAX CODE ANN. § 11.182(e) (Vernon 2001); *see also* Op. Tex. Att'y Gen. No. JC–0576 (2002) (stating "to qualify for an exemption … [t]he organization must qualify as a community housing development organization under section 11.182(b) of the Tax Code and 'control 100 percent of the interest in the general partner if the project is owned by a limited partnership' "). As previously

noted, the structure used for obtaining LIHTCs is typically a limited partnership.[2] Thus, using strict construction, we can interpret section 11.182 to mean that when the low-income housing project is financed by LIHTCs and owned by a limited partnership, the requirement in subsection (b) that the CHDO own the property is not an "applicable" requirement. Under this construction, no part of the statute is rendered meaningless.

### CONSTITUTIONAL ARGUMENT

Having determined that the plain meaning of section 11.182(e) was to extend the ad valorem exemption to qualified limited partnerships, I now turn to the majority's argument that the Texas Constitution prohibits extending an ad valorem exemption to the Cameron Village project. The majority contends that Cameron Village, Ltd. is not entitled to the exemption because it is not an institution engaged primarily in public charitable functions as required by the Texas Constitution. I disagree.

Laws exempting property from taxation are presumed to be constitutional. *See* TEX. GOV'T CODE ANN. § 311.021(1) (Vernon 2005). To satisfy the requirements of the Texas Constitution, the building must be owned by an institution engaged primarily in public charitable functions. TEX. CONST. art. VIII § 2(a). Public charitable functions include the provision of affordable housing for low-income and moderate-income families. *See* TEX. TAX CODE ANN. § 11.18(d)(18) (Vernon 2001).

Cameron Village, Ltd. was formed with the sole purpose "to develop, own, hold for investment, finance, operate, manage and lease" the Cameron Village low-income housing project "consistent with the chari-

---

**2.** The LIHTC only requires that a non-profit organization "own an interest in the project (directly *or through a partnership* ) and mate-

rially participate … in the development and operation of the project." 26 U.S.C. § 42(h)(5)(B) (2007) (emphasis added).

table purposes of [Community Action Corporation of South Texas]." In order for Community Action Corporation of South Texas to retain its tax exempt status under § 501(c)(3) of the Internal Revenue Code, it must maintain control of the day to day activities of Cameron Village and demonstrate that it is furthering its exempt purpose. Marni Hussong, *Protecting the Tax-exempt Status of Housing Developers Participating in Low-income Housing Tax Credit Partnerships,* 76 WASH. L.REV. 243, 244 (2001).

The majority concludes that a limited partnership which is not a CHDO could not be an *institution engaged primarily in public charitable functions.* The record refutes this contention. Cameron Village, Ltd. was structured to comply with the LIHTC program requirements for low-income housing. Its general partner is a 501(c)(3) non-profit that must pursue its charitable purpose or lose its tax exempt status. The record shows that Cameron Village residents also receive a variety of social services including counseling, job training, and medical screening from Cameron Village, Ltd. There is no explanation offered by the majority for its conclusion that Cameron Village, Ltd. could not be an institution engaged primarily in a public charitable function and thus qualify for the tax exemption. The majority's conclusion, therefore, is not supported by the evidence or the law.

### CONCLUSION

Because 11.182(e) clearly anticipates ownership of a low-income property by a limited partnership, the most logical reading of the statute is that the legislature intended what it said: under specific circumstances a limited partnership can receive an exemption. Accordingly, I believe

the judgment of the trial court should be affirmed.