Affirmed and Opinion filed March 19, 2009








Affirmed and Opinion filed March 19, 2009.

 

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00990-CV

____________

 

AMERICAN HOUSING FOUNDATION AND
BRANDYWOOD HOUSING, LTD., Appellants

 

V.

 

HARRIS COUNTY APPRAISAL DISTRICT, Appellee

 



 

On Appeal from the 190th
District Court

Harris County, Texas

Trial Court Cause No. 2003-69254A

 



 

O P I N I O N








A Texas limited partnership that holds title to an
apartment complex and the non-profit corporation that owns the general partner
of the limited partnership appeal the trial court=s summary judgment
rejecting their claims that the complex is entitled to property tax exemptions
under section 11.182 of the Texas Tax Code.  These entities assert on appeal
that subsection (e) of that section applies to housing projects constructed
before December 31, 2001, and that this section extends tax-exempt status to
property that would not be exempt under subsection (b) of that section. 
Concluding that these arguments lack merit, we affirm the trial court=s judgment. 

                        I.  Factual and Procedural Background

This
case involves the issue of whether the purported owners of the Brandywood
Apartments (hereinafter AApartments@) are entitled to an exemption from property taxes under section 11.182 of
the Texas Tax Code[1]
during tax years 2002 and 2003.  The apartment complex is a
low-and-moderate-income housing project in Harris County, Texas.  The following
facts relevant to the exemptions for these two tax years are undisputed.  The
Apartments were constructed before December 31, 2001.  Appellant American
Housing Foundation (hereinafter AAmerican@) was a Texas
non-profit corporation and a Community Housing Development Organization (ACHDO@).  American was
the sole shareholder of Brandywood Apartments, Inc., a Texas corporation (ABrandywood@).  Brandywood
owned 1% of and was sole general partner of Brandywood Housing, Ltd., a Texas
limited partnership (hereinafter AHousing@).  Housing was
the holder of title to the property on which the Apartments are located.  An
unrelated entity was the limited partner in Housing and owner of a 99% interest
in Housing.  

As to tax years 2002 and 2003, Brandywood and Housing
(hereinafter collectively AClaimants@) sought an
exemption from property tax for the Apartments under section 11.182.  Appellee Harris County
Appraisal District
(hereinafter the ADistrict@) denied Claimants= requests for exemption.  Claimants
protested this determination before the appropriate appraisal review board,
which also denied the requests for exemption.  Claimants then sought review in
the district court below and also sought declarations under the Uniform
Declaratory Judgments Act.  See Tex.
Civ. Prac. & Rem. Code ' 37.001, et seq. (Vernon
2008).  








In its
motion for summary judgment, the District asserted that summary judgment should
be granted because:

(1)       Under subsection (b), to be entitled to an exemption, the
organization that owns the property must be a CHDO. However, Housing, the
titleholder to the property in question, is not a CHDO, and, though American is
a CHDO, it owns only a 1% interest in Housing.  

(2)       Claimants assert that, even though they are not entitled to
an exemption under subsection (b), they are entitled to an exemption under
subsection (e).  However, subsection (e) applies only to housing projects built
after December 31, 2001, and the Apartments were built before December 31, 2001.

The
Claimants filed a motion for summary judgment asserting that subsection (e)
applies to housing projects constructed both before and after December 31,
2001, and that section 11.182(e) extends the scope of the exemption available
under section 11.182 so as to allow Claimants to obtain the exemption because
the CHDO owns 100% of Brandywood (the general partner of the titleholder) and
because American satisfies the applicable requirements of section 11.182.  The
trial court denied Claimants= motion and granted the District=s motion.  The Claimants appeal the
trial court=s final summary judgment.

                                                       II.  Issues Presented

The
Claimants assert the following appellate issues:

(1)       Whether section 11.182 allows limited partnerships to claim a
property tax exemption under the specific requirements of subsection (e).

(2)       Whether subsection (e) applies to properties constructed both
before and after December 31, 2001.

(3)       Whether the trial court
erred in failing to grant the Claimants= motion for summary judgment.








                                                   III. Standard of Review

In a traditional motion for summary judgment, if the movant=s motion and summary-judgment
evidence facially establish its right to judgment as a matter of law, the
burden shifts to the nonmovant to raise a genuine, material fact issue
sufficient to defeat summary judgment.  M.D. Anderson Hosp. & Tumor
Inst. v. Willrich, 28 S.W.3d 22, 23 (Tex. 2000). In our de novo
review of a trial court=s summary judgment, we consider all the
evidence in the light most favorable to the nonmovant, crediting evidence
favorable to the nonmovant if reasonable jurors could, and disregarding
contrary evidence unless reasonable jurors could not.  Mack Trucks, Inc. v.
Tamez, 206 S.W.3d 572, 582 (Tex. 2006).  The evidence raises a genuine
issue of fact if reasonable and fair-minded jurors could differ in their
conclusions in light of all of the summary-judgment evidence.  Goodyear Tire
& Rubber Co. v. Mayes, 236 S.W.3d 754, 755 (Tex. 2007). 

                                                      IV.
Relevant Statute

In
pertinent part, section 11.182 provides as follows:

(a) In
this section:

. . .

(2) ACommunity housing development organization@ has the meaning assigned by 42 U.S.C. Section 12704.

(b) An organization is entitled to an exemption from taxation of
improved or unimproved real property it owns if the organization:

(1) is
organized as a community housing development organization;

(2) meets
the requirements of a charitable organization provided by Sections 11.18(e) and
(f);

(3) owns
the property for the purpose of building or repairing housing on the property
to sell without profit to a low‑income or moderate‑income
individual or family satisfying the organization's eligibility requirements or
to rent without profit to such an individual or family;  and            








(4)
engages exclusively in the building, repair, and sale or rental of housing as
described by Subdivision (3) and related activities.

(c) Property owned by the organization may not be exempted under
Subsection (b) after the third anniversary of the date the organization
acquires the property unless the organization is offering to rent or is renting
the property without profit to a low‑income or moderate‑income
individual or family satisfying the organization's eligibility requirements.

(d) A multifamily rental property consisting of 36 or more dwelling
units owned by the organization that is exempted under Subsection (b) may not
be exempted in a subsequent tax year unless in the preceding tax year the
organization spent, for eligible persons in the county in which the property is
located, an amount equal to at least 40 percent of the total amount of taxes
that would have been imposed on the property in that year without the exemption
on social, educational, or economic development services, capital improvement
projects, or rent reduction.  This subsection does not apply to property
acquired by the organization using tax‑exempt bond financing after
January 1, 1997, and before December 31, 2001.

(e) In addition to meeting the applicable requirements of
Subsections (b) and (c), to receive an exemption under Subsection (b) for
improved real property that includes a housing project constructed
after December 31, 2001, and financed with qualified 501(c)(3) bonds issued
under Section 145 of the Internal Revenue Code of 1986, tax‑exempt
private activity bonds subject to volume cap, or low‑income housing tax
credits, the organization must:

(1) control 100 percent of the interest in the general partner
if the project is owned by a limited partnership;

(2) comply with all rules of and laws administered by the Texas
Department of Housing and Community Affairs applicable to community housing
development organizations;  and

(3) submit annually to the Texas Department of Housing and Community
Affairs and to the governing body of each taxing unit for which the project
receives an exemption for the housing project evidence demonstrating that the
organization spent an amount equal to at least 90 percent of the project=s cash flow in the preceding fiscal year as determined
by the audit required by Subsection (g), for eligible persons in the county in
which the property is located, on social, educational, or economic development
services, capital improvement projects, or rent reduction.

Tex. Tax Code Ann. ' 11.182 (Vernon
2008) (emphasis added).








The principal issues in this appeal turn on the
interpretation of this statute.  We review the trial court=s interpretation
of applicable statutes de novo.  See Johnson v. City of Fort Worth, 774
S.W.2d 653, 655B56 (Tex. 1989).  In construing a statute,
our objective is to determine and give effect to the legislature=s intent.  See
Nat=l Liab. & Fire Ins. Co. v. Allen, 15 S.W.3d 525,
527 (Tex. 2000).  If possible, we must ascertain that intent from the language
the legislature used in the statute and not look to extraneous matters for an
intent the statute does not state.  Id.  If the meaning of the statutory
language is unambiguous, we adopt the interpretation supported by the plain
meaning of the provision=s words.  St. Luke=s Episcopal Hosp.
v. Agbor, 952 S.W.2d 503, 505 (Tex. 1997).  We must not engage in forced or
strained construction; instead, we must yield to the plain sense of the words
the legislature chose.  See id.  Legislative intent is gleaned from the
statute as a whole, and statutes are interpreted to give effect to every part
of the whole.  State ex rel. State Dep=t of Highways
& Public Transp. v. Gonzalez, 82 S.W.3d 322, 327 (Tex. 2002).  

Exemptions from taxation are not favored by the law and
will not be favorably construed.  North Alamo Water Supply Corp. v. Willacy
County Appraisal Dist., 804 S.W.2d 894, 899 (Tex. 1991).  Statutory
exemptions from taxation are subject to strict construction because they
undermine equality and uniformity by placing a greater burden on some taxpaying
businesses and individuals rather than placing the burden on all taxpayers
equally.  Id.  Accordingly, the burden of proof of clearly showing that
the organization falls within the statutory exception is on the claimant
seeking the exemption.  Id.

                                           V. Analysis

A.      Does
subsection (e) expand the category of properties that are entitled to exemption
under subsection (b)? 








In their first issue, Claimants assert that subsection (e)
modifies subsection (b) to expand the availability of exemptions to properties
owned by certain limited partnerships that previously had been ineligible for
the exemption under subsection (b).  Under their first issue, Claimants argue
the following points:

!       To be entitled to an exemption under
subsection (b), the organization that owns the property, among other things,
must be a CHDO.

!       Housing, the
holder of title to the property on which the Apartments are located, is a Texas limited partnership.

!       As a matter of law, Texas limited
partnerships can never be CHDOs; therefore, Housing is not a CHDO.

!       Because Housing is not a CHDO, the Claimants
cannot be entitled to an exemption under subsection (b), absent an equitable
title argument which Claimants state Ais not directly at issue in this appeal.@

!       By adding subsection (e), effective January
1, 2002, the Texas Legislature expanded the exemption available under
subsection (b) and made it available to a new group of ownersCowners who are limited partnerships
(and thus do not satisfy the requirements of subsection (b)) but whose
respective general partners are 100% owned by  organizations that satisfy the
requirements of subsections (b),(c), and (e).  

!       The phrase Aapplicable requirements of Subsections (b) and (c),@ as used in subsection (e) means
that, an owner who is a limited partnership is required to satisfy only the
requirements of subsections (b) and (c) that a limited partnership is capable
of satisfying.  If this construction is not adopted, then subsection (e) is
rendered meaningless, because subsection (e) contemplates that an exemption may
be obtained when the property is owned by a limited partnership.

!       American
owns 100% of Housing=s sole general partner.  American 
satisfies all Aapplicable requirements@ of subsections
(b), (c), and (e).  Therefore, Claimants are entitled to an exemption under
subsection (e).








The Texas Legislature added subsection (e) effective
January 1, 2002.  See Act of May 25, 2001, 77th Leg., R.S., ch. 1191, ' 1, 2001 Tex. Gen.
Laws 2694, 2695B96.  In making this addition to the
statute, the Texas Legislature, in pertinent part, stated that A[i]n addition to
meeting the applicable requirements of Subsections (b) and (c), to receive an
exemption under Subsection (b) . . . the organization must . . . control 100
percent of the interest in the general partner if the project is owned by a
limited partnership.@  Under its unambiguous language,
subsection (e) imposed additional requirements beyond the applicable
requirements of subsections (b) and (c).  In subsection (e), the Texas
Legislature did not create a new exemption or expand the exemption that already
existed under subsection (b).  Instead, to the extent that subsection (e)
applies, it adds new requirements that must be satisfied to obtain the
exemption provided under subsection (b).  See Tex. Tax Code Ann. ' 11.182; Jim
Wells County Appraisal Dist. v. Cameron Village, Ltd., 238 S.W.3d 769, 773B75 (Tex. App.CSan Antonio 2007,
pet. filed); TRQ Captain=s Landing L.P. v.
GCAD,
212 S.W.3d 726, 735 (Tex. App.CHouston [1st. Dist.] 2006, pet. granted). 
To adopt Claimants= construction would render meaningless the
words Ain addition to@ and Ato receive an
exemption under Subsection (b).@  

If the property in question has been owned by the same
organization for more than three years, then, under subsection (c), the
property may not be exempted under subsection (b), unless the organization is offering to rent
or is renting the property without profit to a low‑income or moderate‑income
individual or family satisfying the organization=s eligibility requirements.  See Tex. Tax Code Ann. ' 11.182(c).  This
requirement applies to organizations that have owned the property for more than
three years but not to organizations that have owned the property for less than
three years.  See id.  The unambiguous meaning of  Aapplicable
requirements of Subsections (b) and (c)@ is the
requirements of subsections (b) and (c) that apply to the organization in
question.  See id. ' 11.182; Cameron Village, Ltd., 238
S.W.3d 769, 775B76.  However, under subsection (b), the
Texas Legislature required all owners to be CHDOs to be eligible for an
exemption under subsection (b), and  therefore, the requirement that the
organization that owns the property be a CHDO is applicable to all
organizations.  See Cameron Village, Ltd., 238 S.W.3d 769, 775B76.  The Claimants= proffered
construction of the phrase Aapplicable requirements of Subsections (b)
and (c)@ is contrary to
that phrase=s plain meaning.  See id.








As Claimants point out, the language of subsection (e) indicates
that property may be exempted under subsection (b), even though the titleholder
to the property is a limited partnership, which would not be a CHDO or a
charitable organization.  Nonetheless, this language is not rendered
meaningless by this court=s failure to adopt Claimants= proffered
construction.  This language has meaning if, as the First Court of Appeals has
held, a charitable organization that is a CHDO, that satisfies the applicable
requirements of subsection (b) and (c), and that is the equitable owner of the
property can be considered to Aown@ the property
within the meaning of subsection (b).  See Tex. Tax Code Ann. ' 11.182(b); Harris
County Appraisal District v. Primrose Houston 7 Housing, L.P., 238 S.W.3d
782, 786B88  (Tex. App.CHouston [1st.
Dist.] 2007, pet. filed); TRQ Captain=s Landing L.P., 212 S.W.3d at
732B36.  Claimants did
not assert in the trial court that American is the equitable owner of the
Apartments.  Though they did make this assertion in their reply brief on
appeal, they did not make this argument in their opening appellate brief. 
Therefore, Claimants have waived the contention that they qualify for the
exemptions because American is the equitable owner.[2] 
      For the reasons stated above, Claimants= arguments under
their first issue are contrary to the unambiguous language of section 11.182
and lack merit.  Accordingly, we overrule the first issue.

 








B.      Does
section 11.182(e) apply even though the Apartments were constructed before December
31, 2001?

In their second issue, Claimants assert that subsection (e)
applies to housing projects constructed both before and after December 31,
2001.  Under their second issue, Claimants argue as follows:

!       Under the Code Construction Act and common
law, unless the statute or context in which Aincludes@ is used require otherwise, Aincludes@ is a term of enlargement and not of limitation or exclusive
enumeration, and its use does not create a presumption that components not
expressed are excluded.  See Tex.
Gov=t Code Ann. '
311.005(13) (Vernon
2005).  

!       The Texas Legislature intended subsection (e)
to apply to exemptions for the 2002 tax year as to housing projects that were
under construction on January 1, 2002, but not completed on that date.
Therefore, the Texas Legislature stated that subsection (e) applies to Aimproved real property that includes a housing project
constructed after December 31, 2001.@

!       To give effect to the meaning of Aincludes@ under the Code Construction Act
and common law, courts should construe subsection (e) to apply to housing
projects constructed both before and after December 31, 2001.

!       The significance that the Texas Legislature
attributed to capital improvements under subsection (e)(3) indicates that the
Texas Legislature intended subsection (e) to apply to housing projects
constructed before January 1, 2002.  The fact that subsection (e)(3) allows 90%
of the project=s cash flow in the previous fiscal
year to be spent on capital improvement projects strongly indicates that the
Texas Legislature intended subsection (e) to apply to projects completed before
January 1, 2002.

!       It would be arbitrary to construe subsection
(e) to apply only to projects constructed after December 31, 2001 and not to
projects constructed before December 31, 2001 and repaired after that date.  








As discussed above, the Texas Legislature enacted
subsection (e) to be effective January 1, 2002 and to impose additional
requirements that must be satisfied to obtain an exemption under subsection
(b), beyond the applicable requirements of subsections (b) and (c).  In subsection
(e), the Texas Legislature did not create a new exemption or expand the
exemption that already existed under subsection (b).  In addressing the second
issue, we must decide whether subsection (e) applies to housing projects, such
as the Apartments, that were constructed before December 31, 2002.  In the
pertinent part of subsection (e), the Texas Legislature stated that A[i]n addition to
meeting the applicable requirements of Subsections (b) and (c), to receive an
exemption under Subsection (b) for improved real property that includes a
housing project constructed after December 31, 2001 . . . the organization must
. . . .@  Under its
unambiguous language, subsection (e) sets forth additional requirements for
parties seeking an exemption under subsection (b) for improved real property
that has upon it a housing project constructed after December 31, 2001; if the
real property includes a housing project constructed before December 31, 2001,
then subsection (e) does not apply. See Tex. Tax Code Ann. ' 11.182(e); Cameron
Village, Ltd., 238 S.W.3d at 774; TRQ Captain=s Landing L.P., 212 S.W.3d at
735B36; Am. Housing
Foundation v. Calhoun County Appraisal Dist., 198 S.W.3d 816, 818B19 (Tex. App.CCorpus Christi 2006, pet. denied);  Am.
Housing Foundation v. Brazos County Appraisal Dist., 166 S.W.3d 885, 888B89 (Tex. App.CWaco 2005, pet.
denied).  Contrary to Claimants= arguments, the intent expressed in the
unambiguous language selected by the Texas Legislature was not to have
subsection (e) apply regardless of when the housing project was constructed and
to simply clarify that subsection (e) applies to housing projects in which
construction began before January 1, 2002 and was completed after that date. 
Adopting Claimants= proffered construction would render
meaningless the words Aconstructed after December 31, 2001.@  See Am. Housing Foundation, 198 S.W.3d at 819.








The Code Construction Act and common law upon which
Claimants rely state the rule that Aincludes@ and Aincluding,@ unless the
context shows otherwise, do not indicate a limitation or exclusive
enumeration.  For example, the phrase, Amotions,
including  motions for summary judgment,@ does not limit
the motions in question to only motions for summary judgment.  Claimants= argument proceeds
as if, in subsection (e), the Texas Legislature had used the words Ato receive an
exemption under Subsection (b) for real property, including improved real
property upon which a housing project was constructed after December 31, 2001.@  However, the
Texas Legislature did not choose this language.  Instead, in subsection (e),
the clause Athat includes a housing project constructed after
December 31, 2001@ modifies Aimproved real
property.@  The word Aincludes@ is not used in an
exclusive sense; the improved real property can include elements other than a
housing project constructed after December 31, 2001.  See Am. Housing Foundation, 198 S.W.3d at 818B19.  Nonetheless, the Texas
Legislature chose to make the additional requirements of subsection (e)
applicable prospectively and only to organizations seeking an exemption under
subsection (b) for improved real property that includes a housing project constructed
after December 31, 2001.  Construing subsection (e) in this manner accords with
the Code Construction Act and common law.  See Tex. Gov=t Code Ann. ' 311.005(13); Am.
Housing Foundation,
198 S.W.3d at 818B19.  








Claimants assert that the requirement contained in
subsection (e)(3) shows that the Texas Legislature intended subsection (e) to
apply to housing projects completed before January 1, 2002. Under subsection
(e)(3), the organization must Asubmit annually . . . evidence demonstrating that the
organization spent an amount equal to at least 90 percent of the project=s cash flow in the preceding fiscal
year . . . for eligible persons in the county in which the property is located,
on social, educational, or economic development services, capital improvement
projects, or rent reduction.@ Tex. Tax Code
Ann. ' 11.182(e)(3). 
This language does not indicate that subsection (e) applies to housing projects
completed before January 1, 2002.  This part of the statute requires the
organization to show that 90% of the project=s cash flow in the preceding fiscal year was used for one of five different
items, only one of which is capital improvement projects.  See id.  An
organization could comply with this requirement without using any of the
housing project=s cash flow in the preceding fiscal year for capital
improvement projects.  See id.  The fact that an organization could
satisfy this requirement by using 90% of its housing project=s cash flow in the
preceding fiscal year for capital
improvement projects does not show that the Texas Legislature intended
subsection (e) to apply to housing projects completed before January 1, 2002. 

Claimants also point out that subsection (b)(3) includes
organizations that Aown[] the property for the purpose of . .
. repairing housing on the property to sell without profit to a low‑income
or moderate‑income individual or family satisfying the organization=s eligibility
requirements or to rent without profit to such an individual or family.@   Id. ' 11.182(b)(3)
(emphasis added).  Claimants assert that it would be arbitrary and unreasonable
to construe subsection (b) as applying only to repairs to housing constructed
after January 1, 2002, because this construction would eliminate the subsection
(b) exemption for housing projects involving repairs unless the project had
been constructed after January 1, 2002.  This argument lacks merit.  If
subsection (e) applies, then the organization must satisfy additional
requirements.  If subsection (e) does not apply, no exemption under subsection
(b) is thereby eliminated.  It is neither arbitrary nor unreasonable for the
Texas Legislature to have chosen to apply the additional restrictions in
subsection (e) only to housing projects completed after December 31, 2001,
which would include both projects constructed after this date and repairs to
projects constructed after this date.  Because the Apartments are not a housing
project in this category, subsection (e) does not apply to the Apartments or to
Claimants= attempts to obtain an exemption for the real property
on which the Apartments were constructed. 

For the reasons stated above, Claimants= arguments under
their second issue are contrary to the unambiguous language of section 11.182
and lack merit.  Accordingly, we overrule the second issue.

 








C.      Did the
trial court err in denying Claimants= motion for
summary judgment?

In their third issue, Claimants assert the trial court
erred in denying their motion for summary judgment for all the same reasons
given by Claimants as to why the trial court purportedly erred in granting the
District=s motion for
summary judgment.  As discussed above, we have concluded that these reasons
lack merit.  Accordingly, we overrule Claimants= third issue.

                                                 VI. Conclusion

Under its unambiguous language, subsection (e) imposes
additional requirements that must be satisfied beyond the applicable
requirements of subsections (b) and (c).  In subsection (e), the Texas
Legislature did not create a new exemption or expand the exemption that already
existed under subsection (b).  Under the unambiguous language selected by the
Texas Legislature, subsection (e) applies only to improved real property upon
which a housing project was constructed after December 31, 2001.  Because the
trial court did not err in granting the District=s motion for
summary judgment and denying Claimants= motion, we affirm
the trial court=s judgment.

 

 

/s/      Kem Thompson Frost

Justice

 

 

Panel
consists of Justices Anderson, Frost, and Hudson.*  









[1]  Unless otherwise stated, all statutory references in
this opinion are to the Texas Tax Code, and all references to subsections are
references to subsections of section 11.182 of the Texas Tax Code.





[2]  See Tex.
R. App. P. 38.3; Zamarron v. Shinko Wire Co., 125 S.W.3d 132, 139
(Tex. App.CHouston [14th Dist.] 2003, pet. denied).  In any
event, even if Claimants had not waived this issue, the undisputed evidence
shows that (1) American owns Brandywood; (2) Brandywood owns only 1% of
Housing; and (3) an entity unrelated to American owns a 99% interest in
Housing.  Under the undisputed facts, American would not qualify as the
equitable owner of the Apartments.  See Primrose Houston 7 Housing,
L.P., 238 S.W.3d at 786B88  (holding
that the CHDO was not equitable owner under subsection (b) because it did not
have the present right to compel legal title given that, though it owned 100%
of the general partnership in the limited partnership that held title, the CHDO
owned only a .01% interest in the limited partnership); TRQ Captain=s Landing L.P.,
212 S.W.3d at 732B36 (holding that American Housing Foundation could be
considered the equitable owner of the property under subsection (b) because it
had the present right to compel legal title given that, through its
wholly-owned subsidiary, American owned 100% of the limited partnership that
held title to the land).





*  Senior Justice Harvey Hudson sitting by assignment.